[No. 13692. Department One. June 15, 1917.]

ANNIE VAN HORST, *Petitioner and Appellant*, v. PAUL VAN HORST, *Defendant and Cross-Appellant*.[1]

DIVORCE—DECREE—ALIMONY—MODIFICATION—EVIDENCE. A decree of divorce, awarding to the wife alimony in the sum of fifty dollars a month, and one-half of the community interest in 60 shares of corporate stock, is properly modified so as to require delivery of only 6 shares of the stock, without any increase in alimony asked for by the wife, the husband to pay certain community debts, where it appears that the husband only owned twelve shares of the stock at the time of the decree and was paying for the balance on the installment plan, that the wife, 38 years of age, was able-bodied and capable of earning $65 per month, and the husband, who had largely overdrawn his salary account, had remarried and was supporting his second wife on a salary of $200 per month, $50 of which was being credited on his stock subscription.

Cross-appeals from a judgment of the superior court for King county, Tallman, J., entered April 28, 1916, upon findings favorable to the defendant, in an action to modify a decree of divorce, tried to the court. Affirmed.

[1]Reported in 165 Pac. 886.

*Frank A. Paul* (*Walter S. Fulton,* of counsel), for petitioner and appellant.

*B. S. Grosscup* and *W. C. Morrow,* for defendant and cross-appellant.

WEBSTER, J.—On April 28, 1908, plaintiff and defendant were married at Victoria, British Columbia. On May 8, 1915, plaintiff instituted an action for divorce against defendant in the superior court of King county. On June 25, 1915, after personal service on defendant, a default decree was entered granting to plaintiff an absolute divorce and awarding her the household furniture and alimony at the rate of $50 per month, payable weekly in advance. It was further provided in the decree that defendant should deliver to plaintiff a certificate of stock in the Standard Chemical Company, a Washington corporation, equal to one-half of the interest of the community composed of plaintiff and defendant in that corporation. It was provided in the decree that, upon proper application in the future, the decree might be modified to conform to changed conditions of the parties. The decree was supported by findings to the effect that defendant had abandoned plaintiff, had been guilty of cruelty toward her, had inflicted upon her personal indignities which rendered her life burdensome, and had failed to make suitable provision for her support; that there was no community real property belonging to the parties, but that they were the owners of the following community personalty: (1) Household effects amounting to not to exceed $100 in value, and (2) an equitable interest to the extent of $4,250, par value, in the capital stock of the Standard Chemical Company; that defendant was an able-bodied man, a chemist by profession, and was capable of earning from $140 to $250 per month in salary.

On January 31, 1916, plaintiff filed a petition in the original action praying for a modification of the decree, alleging, among other things, that she was heavily burdened with debts

incurred prior to the decree of divorce; that defendant's salary had been increased since the entry of the decree, and that he was at that time capable of earning not less than $250 or $300 per month; that he was in arrears in the payment of alimony, and that he had not delivered to her the certificate of stock in the Standard Chemical Company as provided in the decree. She prayed that the decree be modified so as to allow her alimony at the rate of $25 per week, and that defendant be cited to show cause why he should not be punished for contempt for failing to transfer to her the above mentioned certificate of stock. On February 9, 1916, defendant also filed a petition seeking a modification of the decree, and set forth in substance that the finding upon which the original decree was based, to the effect that the community was the equitable owner of capital stock in the Standard Chemical Company amounting to $4,250, was erroneous and was the result of a misunderstanding between himself and the attorney for plaintiff; that, at the time of the entry of the decree, he was employed by the Standard Chemical Company and had subscribed for sixty shares of the capital stock of the company of the par value of $50 each, for which he was paying in monthly installments; that, since April 15, 1915, he had been earning a salary of $150 per month in cash and a credit of $50 per month upon his stock subscription contract; that he had been carrying a large amount of indebtedness, the most of which had been incurred for the benefit of the community; that he had paid to plaintiff all of the alimony awarded to her in the decree; that plaintiff was a young woman in good health; that she was an experienced and competent bookkeeper and stenographer and was capable of earning from $65 to $100 per month. He prayed that the decree be modified by striking from it the provision relating to the transfer of stock in the Standard Chemical Company, and that alimony at the rate of $50 per month as fixed in the original decree be permitted to stand.

Both petitions were heard on March 27, 1916, resulting in a decree denying plaintiff's application for increased alimony, but providing that alimony at the rate of $50 per month, payable weekly in advance as provided in the original decree, should be paid by defendant; that, as between plaintiff and defendant, the unpaid community indebtedness antedating the entry of the original decree, amounting in the aggregate to $1,815 exclusive of interest, should be paid by defendant, and in the event that any of the creditors holding the claims representing that amount should enforce payment thereof against plaintiff, either by suit or otherwise, she should be entitled to judgment over against defendant for the amount for which she had been held liable. It was further provided that the original decree directing defendant to deliver to plaintiff a certificate of stock in the Standard Chemical Company in an amount equal to one-half of the community interest therein, found by the court to be $4,250, be modified, and it appearing to the court that, at the time of the hearing, defendant was the owner of twelve shares of the capital stock of the Standard Chemical Company of the par value of $50 each, that he should, within ninety days from the date of the entry of the decree, issue or cause to be issued to plaintiff a certificate for six shares thereof, but that the remaining six shares and such stock as defendant might thereafter earn should be his sole and individual property. The decree was supported by findings to the effect that the findings upon which the original decree was based — that the community composed of plaintiff and defendant was the equitable owner of capital stock in the Standard Chemical Company of the par value of $4,250—was erroneous; that the true facts were that defendant had, on March 1, 1915, subscribed for sixty shares of the capital stock of that company, and on the same day a resolution was passed by the company fixing defendant's salary at $200 per month, of which $150 was to be payable in cash and $50 per month was to be credited upon his stock subscription agreement, so that one

full share in the stock of the company should be paid for by defendant's services at the end of each month of his·employment; that his salary had not been increased since the date of the resolution, and that the total credits upon his stock subscription from March 1, 1915, to February 29, 1916, under the agreement evidenced by the resolution, amounted to $600, or twelve shares of stock at the par value of $50 each; that the amount of community indebtedness was $1,815, exclusive of interest; that from April 17, 1915, to February 28, 1916, defendant had, by permission of the company, overdrawn his salary account in the sum of $1,412.40, for which he had executed his promissory notes, which were then unpaid; that plaintiff had received from defendant since the date of the original decree the sum of $445, being in full of alimony as provided in the decree to the time of the hearing; that plaintiff is an able-bodied woman, thirty-eight years of age, capable of earning $15 per week, and that there were no children of the parties to be cared for; that defendant had remarried and was living with and supporting his wife.

Plaintiff, considering herself aggrieved, has appealed from that portion of the decree refusing to increase the alimony from $50 per month to $25 per week, and also from that part thereof which adjudged her to be the owner of six shares only of stock in the Standard Chemical Company. The defendant, also being dissatisfied with the disposition made of the case, appeals from that portion of the decree which adjudges that, as between himself and plaintiff, he is wholly and solely liable for the unpaid community obligations, and also from that part thereof ordering him to deliver to plaintiff a certificate for six shares of the capital stock of the Standard Chemical Company.

The questions presented are whether the lower court erred (a) in modifying the original decree in respect to the provision requiring defendant to deliver to plaintiff capital stock of the Standard Chemical Company in an amount equal to one-half of $4,250, and adjudging that plaintiff was en-

titled to only six shares of stock of the par value of $50 each; (b) in denying plaintiff's application for an increase of alimony, and (c) in adjudging that, as between plaintiff and defendant, the latter should be solely liable for the community indebtedness antedating June 25, 1915.

There is very little dispute between counsel as to the law of the case, the questions presented being largely dependent for their solution upon the facts. It would serve no useful purpose to enter into a detailed discussion of the evidence relating to the life and affairs of this unhappy and unfortunate couple. That plaintiff invested substantial amounts of money in various companies with which defendant was connected there can be no doubt. That these investments proved to be disastrous is perfectly plain. But whether this result was brought about through lack of business judgment on the part of the defendant, or was due to other and more serious delinquencies on his part, or was due to causes over which he had no control, is rather incidental in a proceeding of this'character. The money invested was lost, and consequently is not before the court for division. If this were an action for an accounting between plaintiff and defendant many elements might enter into the case that cannot properly be considered in a proceeding such as this. The court, in making a disposition of the property of the spouses incidental to granting a decree of divorce, is necessarily limited by the amount of property in the hands of the court for division. Palpably it cannot divide that which does not exist. In making provision for the wife in the way of alimony, the court is also powerless to compel the husband to pay more than he is able to pay, no matter what his conduct may have been in wasting or dissipating property belonging to the wife.

The modification of the original decree in respect to the amount of stock owned by the community in the Standard Chemical Company was clearly right. It was conclusively established by the evidence that the community did not own stock in that company of the par value of $4,250. Plaintiff,

no doubt, in good faith, believed that the community was the equitable owner of that amount of stock in the company, but the fact remains that the parties did not own it, and consequently it was impossible for defendant to comply with the decree with respect to it.   The defendant, prior to the decree, claimed to have an oral agreement with one Berkheimer by the terms of which he was to share equally with Burkheimer in the profits or dividends derived from eighty-five shares of stock in the company, but for some reason not disclosed by the record this contract, if it ever existed, was not carried into effect.   At all events, the agreement to share the dividends declared upon the stock would not create an equitable title in defendant to the shares of stock themselves. The defendant subscribed for sixty shares of stock in the company for which he was paying in services at the rate of $50 per month, and the stock acquired under this agreement constituted his only holding in the company.   At the time of the hearing, it appeared that defendant had actually paid for or earned twelve shares of stock in the company, and he was required by the court to transfer to plaintiff six shares thereof as her sole and individual property.   But in this connection it should be borne in mind that defendant was required to pay $1,815, with interest, representing the aggregate amount of community indebtedness antedating the decree of divorce, and it is quite plain that, in order to enable him to meet these obligations, the court adjudged to him the remaining six shares then paid for and such additional shares as he might thereafter acquire under his subscription contract.

The evidence adduced clearly established that plaintiff is a business woman of considerable experience; is a competent stenographer and bookkeeper; is thirty-eight years of age and in robust health.   The finding was well within the facts that she was easily capable of earning $65 per month.   There are no children to be cared for, and it would seem that, by supplementing her own income to the extent of $50 per

month in the way of alimony, she will be comfortably provided for and maintained.

A careful reading of the abstract in connection with frequent references to the statement of facts induces the conviction that the decree of the lower court, when considered from all viewpoints, is as nearly just and equitable as the nature of the case and the circumstances of the parties will permit. In disposing of questions of this character resort must necessarily be had to practical considerations, remembering always that the garment must be measured according to the cloth.

The decree will be affirmed, both upon the original and upon the cross-appeal.

ELLIS, C. J., CHADWICK, MAIN, and MORRIS, JJ., concur.