[Civ. No. 43043. First Dist., Div. Two. Feb. 4, 1980.]

In re the Marriage of LESLIE M. and MARK A. MATTHEWS.
LESLIE M. MATTHEWS, Appellant, v.
MARK A. MATTHEWS, Respondent.

COUNSEL

Walter T. Winter for Appellant.

Mark A. Matthews, in pro. per., for Respondent.

OPINION

**ROUSE, J.**—Leslie Matthews appeals from two postjudgment orders in a dissolution of marriage proceeding.

The record reveals that on December 6, 1976, an interlocutory decree was entered dissolving the marriage between Leslie and Mark Matthews. Custody of the parties' two children, Tara and Christopher, then four and one-half and one and one-half years old, respectively, was awarded to Leslie. Mark was awarded visitation rights which included every other weekend and one month during each summer vacation. Mark was ordered to pay monthly child support in the amount of $100 per child.

On August 8, 1977, Leslie moved for an order prohibiting Mark from exposing the children to "religious or Eastern Philosophical teachings and education." Leslie also sought an order prohibiting Mark from cohabiting with a woman to whom he was not married when the children were in his home. Leslie also obtained an order directing Mark to appear and show cause why he should not be held in contempt for failing to pay $200 due as child support for the month of July 1977.

Mark responded by filing a motion for modification of visitation rights and other relief. Among other things, he sought an order increasing his summer visitation rights from one month to two. He proposed that during this two-month period, his child support be reduced by 50 percent and that Leslie be ordered to pay him $100 per child. Mark also asked that a family therapist be appointed to consult with the parties and their children and that the costs of such therapy be shared equally by the parties. In addition, Mark sought an order requiring Leslie to share visitation travel arrangements either by transporting the children to his home or paying the cost of such transportation.

A hearing was held on September 28, 1977. Thereafter, on October 18, 1977, the trial judge ordered that he personally would retain jurisdiction over the matter, and the parties were instructed not to bring any motions for modification or enforcement before any other judge in Alameda County. Elizabeth O'Neill and Anne Robertson were appointed by the court to act as family counselors, and Mark and Leslie were instructed to meet with them and make themselves and the children available to the counselors. A further hearing was scheduled.

On December 1, 1977, following such further hearing, the court rendered a second order. This latter order reiterated the requirement that all future proceedings be held before the same trial judge. It also provided that any attempt by the parties to bring such proceedings before another judge would be punishable as contempt. The court declined to increase Mark's summer visitation from one month to two, but it did order that during the one-month summer visitation period, Mark's child support obligation would be reduced by 50 percent. Leslie was directed forthwith to consult with Dr. Zimmerman, a psychologist, for psychiatric evaluation and to make the children available for evaluation and consultation with Dr. Zimmerman. It was ordered that if Dr. Zimmerman determined that future therapy or counseling was necessary for Leslie or the children, Leslie "shall comply and cooperate in any way requested by Dr. ZIMMERMAN." Elizabeth O'Neill of the conciliation department of the court was given the right and power to supervise visitation and "the authority of this Court to modify or amend the visitation schedule as she may deem reasonable and necessary under the then existing circumstances." Finally, the court directed that Leslie should transport the children to the place of visitation in accordance with the visitation schedules and that Mark should transport the children from the place of visitation back to Leslie's home.

Leslie has appealed from the orders of October 18 and December 1, 1977. Mark has elected not to file a respondent's brief. The appropriate procedure in such a situation is for this court to examine the record on the basis of Leslie's brief and to reverse only if prejudicial error is found. (*Votaw Precision Tool Co.* v. *Air Canada* (1976) 60 Cal.App.3d 52, 55 [131 Cal.Rptr. 335].)

■ Leslie's first contention on appeal is that the trial judge acted improperly when he included, in both of the orders, a requirement that all future proceedings in connection with this matter be brought before him personally and not before any other judge.

Leslie's position is correct. In *People* v. *Osslo* (1958) 50 Cal.2d 75, 104 [323 P.2d 397], a superior court judge sought to reserve to himself alone jurisdiction over a particular matter. In holding such an order to be beyond the judge's power, the California Supreme Court declared that "An individual judge (as distinguished from a court) is not empowered to retain jurisdiction of a cause. The cause is before the court, not the individual judge of that court, and the jurisdiction which the judge

exercises is the jurisdiction of the court, not of the judge. Rules of court which provide that post-trial proceedings in a cause shall be heard by the judge who tried the matter are entirely proper, but the individual judge cannot order that such proceedings must be heard by him."

Obviously, since the trial court lacked the power to reserve personal jurisdiction over the proceedings, that provision in the December 1st order, which threatened the parties with contempt if they should institute any related proceeding before another judge, is also invalid. (2) The violation of an order which exceeds the court's jurisdiction cannot serve as the basis for a judgment of contempt. (*Brady* v. *Superior Court* (1962) 200 Cal.App.2d 69, 73 [19 Cal.Rptr. 242].)

■ Leslie also attacks that portion of the December 1st order which purports to give to Elizabeth O'Neill of the conciliation department the power and authority to supervise visitation and to modify the visitation schedule as she may deem reasonable and necessary.

In a case upon which Leslie relies, *Washburn* v. *Washburn* (1942) 49 Cal.App.2d 581 [122 P.2d 96], a report by a domestic relations investigator provided the only basis for a court order which transferred custody of two minor children from the mother to the father. In reversing this order, the appellate court stated, "The power of decision vested in the trial court is to be exercised by a duly constituted judge, and that power *may not be delegated* to investigators or other subordinate officials or attachés of the court, or anyone else. . . . It is the constitutional right of every citizen and every litigant to be governed by the law as expounded by the judges, and not by officials or employees provided by the legislature to assist a judge in an administrative or quasi-judicial capacity. Such help as may be accorded a judge to assist him in the exercise of his judicial functions may never be permitted to reach the point where someone else decides the case or an issue before him." (P. 589; italics added.)

In a later case, *Fewel* v. *Fewel* (1943) 23 Cal.2d 431, 435-436 [144 P.2d 592], the California Supreme Court disapproved of certain language in the *Washburn* case to the effect that domestic relations investigators were mere "messengers" without the authority to recommend a decision in a particular matter. However, the court reaffirmed the *Washburn* holding that the power of decision vested in the trial court may not be delegated to investigators or other subordinate offi-

cials or attachés of the court. (P. 436.) (To the same effect see *Dahl* v. *Dahl* (1965) 237 Cal.App.2d 407, 413-414 [46 Cal.Rptr. 381].)

Here, there was nothing unreasonable or improper in that portion of the order which authorized Elizabeth O'Neill to supervise visitation rights which had already been established by a prior order of the court. However, that provision authorizing her to alter the visitation schedule in any way she deemed reasonable and necessary constituted an improper delegation of judicial power to a subordinate court attaché. Such a provision is invalid.

■ Leslie claims that the court lacked the authority to direct her to undergo therapy or counseling with Dr. Zimmerman for as long as he (the doctor) deemed necessary and that she "comply and cooperate in any way requested by Dr. ZIMMERMAN." Leslie argues that there is no statutory or decisional law which authorizes a court to impose any such requirement upon a party to a dissolution proceeding. She concedes that subdivision (a) of section 2032 of the Code of Civil Procedure permits the court to order a mental examination by a physician where a party's mental condition is in controversy. She admits that such procedure might be appropriate in a dissolution action where a party's right to have custody of a child is in issue. However, Leslie points out that, in this instance, she was not merely required to submit to a mental examination but was also required to undergo psychiatric therapy for an indefinite period of time. She contends that an order subjecting her to such involuntary psychiatric treatment is beyond the authority of the court and is in direct violation of her due process rights, since it constitutes a fundamental restriction of her liberty unaccompanied by any procedural safeguards.

Again, Leslie's position is sound. We find no precedent for such a provision as that contained in the order of December 1st. Leslie is a party to a dissolution action. There is nothing in this record to indicate that she is an individual who could be subjected to involuntary psychiatric treatment under the provisions of the Lanterman-Petris-Short Act. (Welf. & Inst. Code, § 5150.) It is apparent that the trial court in this case was of the opinion that Leslie would benefit from psychiatric therapy, in that it might help to decrease the animosity between Leslie and Mark and enable Leslie to deal in a more mature manner with the exercise of Mark's visitation rights. Nevertheless, the court's praiseworthy motives furnish no basis for requiring that Leslie undergo involuntary

psychiatric therapy of an unspecified duration. Such a significant curtailment of Leslie's liberty would, at least, require legislative authorization. Undoubtedly, if such legislation were enacted, it would provide for procedural safeguards which were not here accorded to her. Insofar as the court ordered that Leslie comply with every directive of Dr. Zimmerman, the court was engaging in an even broader delegation of judicial power than when it authorized Elizabeth O'Neill to alter the visitation schedule as she saw fit. Of course, such delegation of authority is invalid.

Leslie also complains of the provision in the December 1st order which requires that she transport the children to the place of visitation in accordance with the visitation schedule. She points out that the phrase "place of visitation" is too broad, in that the order could be interpreted as requiring her to transport the children to London if Mark wished to visit them there. She claims that, even if the order were more narrowly drawn, it would still be an abuse of discretion because on the date the order was rendered, she lived in Walnut Creek and Mark had recently moved to St. Helena.

The paramount consideration in matters of child custody and visitation is the welfare of the child. (*Sanchez* v. *Sanchez* (1961) 55 Cal.2d 118, 121 [10 Cal.Rptr. 261, 358 P.2d 533]; *Devine* v. *Devine* (1963) 213 Cal.App.2d 549, 552 [29 Cal.Rptr. 132].) In view of the importance of the parent-child relationship and the likely benefits which a child will receive from visitation with the parent who does not have custody, the courts will attempt to preserve visitation rights whenever possible. (*Devine* v. *Devine, supra*, at p. 553.)

In this instance it is apparent that the trial judge was aware of the distance between the parties' places of residence. Under the circumstances, and in view of the importance of visitation to the children, we find no abuse of discretion on the part of the court in requiring the parties to share equally the burden of transporting the children to and from the place of visitation.

While we agree that the phrase "place of visitation" is susceptible to the broad interpretation suggested by Leslie, there is little doubt that the parties fully understood what the court had in mind. In any event, if either of the parties should ever change their place of residence, then a petition for modification could be brought before the court.

Leslie contends that the trial court erred in failing to rule on her order to show cause why Mark should not be held in contempt for failing to pay child support for the month of July 1977. However, the reporter's transcript of the hearing held on October 28, 1977, shows that Leslie's counsel did not press for such relief and, instead, advised the court that he had collected the unpaid child support prior to the hearing by means of a writ of execution. Under these circumstances, the trial court was correct in concluding that Leslie had abandoned the contempt proceeding.

Leslie's final contention is that the trial court erred in reducing Mark's child support obligation by 50 percent during the one summer month in each year when he had custody of the children. She asserts that Mark made no showing of any change of circumstances, thus the trial court was without authority to decrease his child support obligation.

Leslie is incorrect in such assertion. While we recognize that the parent who has physical custody during the majority of the year must maintain adequate quarters for the children's use at all times, we are of the opinion that it is equitable to reduce or terminate child support payments for those full months in which the children reside with the non-custodial parent.

Moreover, in this case Mark filed a declaration averring that Leslie had remarried and that her new husband, a doctor, supported her and made it unnecessary for her to have employment of her own. Mark further averred that his own financial situation had worsened and that he had also remarried and was expecting a child in January 1978.

In *Cagwin* v. *Cagwin* (1952) 112 Cal.App.2d 14, 15-16 [245 P.2d 379], the court held that a reduction in child support was proper where the wife had profited financially by her second marriage, while the husband's remarriage had increased his expenses. Thus the order reducing Mark's child support obligation for one month each summer was a matter within the court's discretion.

Insofar as they require that all future proceedings in this matter be brought before the same trial judge on penalty of contempt; authorize Elizabeth O'Neill to modify the visitation schedule; and require Leslie to submit to therapy or counseling with Dr. Zimmerman as long as he

(the doctor) deems it necessary, and comply with any request which he (the doctor) might make, the postjudgment orders of October 18 and December 1, 1977, are reversed. In all other respects, the orders appealed from are affirmed.

Taylor, P. J., and Miller, J., concurred.