[No. A057005. First Dist., Div. Five. Mar. 11, 1993.]

In re the Marriage of MARY JANE and ROBERT A. OLSON.
MARY JANE OLSON, Appellant, v.
ROBERT A. OLSON, Appellant.

**COUNSEL**

Bernard N. Wolf and Susan A. Bender for Appellant Wife.

Frank R. Frisch for Appellant Husband.

**OPINION**

KING, J.—In this case we hold that delegation of judicial authority to a special master to make factual findings and exercise judgment in determining the income of the parties for the purpose of setting spousal support is an abuse of discretion, unless done by agreement of the parties. Although it will usually be an abuse of discretion to use a computer program designed to compute temporary spousal support for the determination of permanent spousal support, or a modification thereof, we affirm the procedure under the particular facts of this case, where there was fluctuating income each month and the court, having considered the statutory factors, determined this program would provide a fair method to fix the proper amount of permanent spousal support. Finally, we hold that trial courts possess broad discretion to include, exclude or partially include contributions to individual retirement plans, and earnings or accruals of such plans not actually withdrawn, as income available for determining the amount to be ordered for spousal support.

Mary Jane Olson appeals from an order modifying spousal support, alleging the trial court improperly delegated its judicial authority and erred in establishing a method for determining future support levels.

After 30 years of marriage, Robert and Mary Jane Olson[1] obtained a judgment of dissolution as to marital status in 1984. The following year, the trial court rendered a further judgment incorporating a marital settlement agreement which included spousal support of $1,500 per month. In September 1987, the court denied Mary Jane's motion to increase spousal support except to the extent of $100 per month "volunteered" by Robert. Both parties appealed, but the appeals were dismissed pursuant to a stipulation which made the order nonmodifiable through 1988.

On April 12, 1991, Robert filed a motion to reduce spousal support to $500 per month based on an alleged decrease in his ability to pay. In her responsive declaration, Mary Jane requested that the existing order remain in effect. After a hearing on October 8, 1991, the trial court issued a detailed notice of intended decision.

The court found that a decrease in Robert's wages constituted a substantial change in circumstances since the prior order. It found credible his testimony that his employment earnings would continue to decrease, leading to retirement in the not too distant future. (He was 66 at the time.) Robert was receiving other income from Social Security, interest and dividends, and a small pension. He had over $400,000 in individual retirement accounts (IRAs), annuities, savings bonds, stocks and other savings. Some came from his share of the community property (each party had received about $235,000 at dissolution) and some from postseparation earnings. Robert had paid all spousal support previously ordered.

The court's intended decision provided that Robert would not be required to draw on the principal of his investments or retirement plans for spousal support, but that when he did make withdrawals, whether of income, or principal, the amounts actually received would be considered as income available for spousal support. In order to avoid repeated litigation as Robert's income fluctuated, the trial court provided that he should pay Mary Jane 27 percent of his gross income, from whatever source, each month.

Robert moved for clarification, reconsideration or a new trial. Mary Jane also filed objections to the intended decision. After further hearing, the court

---

[1]For ease of reference, we will refer to the parties by their first names, Robert and Mary Jane. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

issued a minute order incorporating its prior rulings and findings except for the percentage method of calculating spousal support. In order to avoid monthly litigation of support-related issues as the parties' incomes fluctuated, and in light of "the great animosity between the parties and their respective counsel,"[2] the court found it had no choice but to appoint an accountant as a special master to determine the level of income available to each party each month, and to calculate the amount of spousal support to be paid using the standard Dissomaster default computer program.[3]

---

[2]Unfortunately, the animosity between the parties, and between their attorneys, has not lessened with the passage of seven years since the dissolution. Although no court order can require former spouses to curb their animosity toward each other, counsel bear a responsibility to conduct themselves with appropriate professional detachment and not to act as if they themselves were the litigants. In marital dissolution cases, the court possesses the power to impose a sanction to the extent that "the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (See Civ. Code, § 4370.6, subd. (a).) In this case, the bitterness between the parties and counsel seems to have blinded them to the cost of resolving their differences. Indeed, one counsel suggested that the proper way to resolve these disputes about monthly income would be for the parties to return to court each month so that the judge could decide the proper amount of spousal support to be paid for that month. Overburdened taxpayers and judicial resources should not have to bear the further burden of parties who are apparently incapable of acting like mature adults. Although we hold the trial court exceeded its authority in delegating judicial power to the special master, we do not in any way mean to imply that the court was in error by attempting to designate a separate forum for the time-consuming tasks of factfinding and making recommendations to the court, and providing that it be done at the expense of the parties, rather than the taxpayers and the judicial system.

[3]For assistance in setting child support and temporary spousal support, two computer programs appear to be used by most family law judges in California. "Dissomaster" was developed by Stephen Adams, Esq., and is produced by California Family Law Reports, while "Supportax" was developed by George Norton, Esq., and is produced by The Rutter Group. The computer programs determine child support according to the statutory formula and calculate temporary spousal support as provided by local rules for the ordinary case. The benefit of the programs is that they enable a family law judge to input appropriate factual information about the income of the parties and have temporary spousal support computed in accordance with local rules, automatically taking into account the tax consequences of the order to each party. Unusual factors affecting temporary spousal support, and rebuttal factors to the statutory formula for child support, require the judge to make adjustments to the calculations made by the basic computer program.

The default program ordered by the trial court in this case determines the amount for spousal support by taking 40 percent of the high earner's income and reducing it by 50 percent of the low earner's income, taking into account the tax consequences of the deductability of spousal support to the payor, and its taxability to the payee. As we will discuss, the application of such a formula across the board for all cases of temporary spousal support is appropriate as a means of maintaining the financial status quo of the parties pending trial. However, such a blanket approach to permanent spousal support, or the modification of spousal support, would be an abuse of discretion for failing to fix spousal support after consideration of the applicable factors set forth in Civil Code section 4801, subdivision (a).

There are dangers in the use of a computer program, even when used only for temporary spousal support. First of all, since the program is based upon certain assumptions, it should

The order included the following specific provisions: All taxable income received by either party is considered available for support. Future earnings placed in savings accounts, will be considered as available income; those placed in IRAs and tax-deferred annuities will be considered only upon withdrawal. (Robert was ordered to "keep such funds as he is able to save from his income in the future segregated to the extent necessary for the Special Master to determine the source thereof.") Interest income will be considered available for support when withdrawn rather than when accumulated. The special master could adjust the computer program's calculation to account for any extraordinary tax situation which was proven to his satisfaction.[4]

---

only be used where the court has adopted local rules with the same assumptions for the fixing of ordinary temporary spousal support. Second, to the extent unusual circumstances exist in a given case, the temporary spousal support amount generated by the computer program must be adjusted for them. For example, if one of the parties is to be responsible for the income taxes of both, or if one party is paying substantial sums for an adult child to attend college, adjustments should be made.

Although it appears these computer programs are regularly utilized to determine temporary spousal support in most family law courts, there is no authority for their use unless they incorporate guidelines for temporary spousal support adopted by local court rule.

An even greater danger is that the trial judge may use the results from a computer program designed for temporary spousal support to determine permanent spousal support. The purposes of temporary and permanent spousal support are vastly different, and in most cases the amounts ordered for each will be different. The purpose of temporary spousal support is to preserve the status quo of the parties pending trial, while the purposes of permanent support are set forth in Civil Code section 4801, subdivision (a). (See *In re Marriage of Burlini* (1983) 143 Cal.App.3d 65 [191 Cal.Rptr. 541].) For this reason, using a computer program based on the court's guidelines for temporary spousal support is inappropriate for fixing permanent spousal support. However, in looking at different amounts the court might order for permanent support, the court, by using the computer program, is able to obtain a rapid calculation of the tax effects of each amount to each party and determine the resulting net spendable income each party would have at different levels of permanent spousal support. Indeed, by going outside the basic computer program, the judge can even start with different amounts for net spendable income which the supported spouse might need and work backwards to the amount of spousal support to be ordered to result in that amount of net spendable income. Finally, fixing permanent support simply by use of a computer program would be an abdication of judicial responsibility because permanent spousal support must be fixed only after consideration of the applicable factors set forth in Civil Code section 4801, subdivision (a). No computer program can do this; it must be done by the judge.

[4]The title given to the appointee in family law cases appears to be, in part, geographically based. In Northern California the appointee appears to be most often designated a special master, while in Southern California the appointee is called a referee. The latter term apparently comes from the statutory language empowering the court to make a "reference" either by agreement of the parties pursuant to Code of Civil Procedure section 638 or on its own motion pursuant to Code of Civil Procedure section 639. In the family law context, the title of special master may more accurately describe the function the appointee is to perform, especially when the reference is made by agreement of the parties. The ordinary party in marital dissolution cases might envision a referee as someone with a striped shirt and whistle around his or her neck to be blown when a foul is committed, rather than someone

After further briefing, the trial court issued an additional minute order awarding Mary Jane $5,000 in attorney fees and costs. On March 5, 1992, the trial court rendered its order after hearing. It specifies that Robert may deduct from his taxable income "legitimate business expenses as determined by the Special Master." It also differs from the minute orders by providing that future taxable interest earned by bank accounts currently in existence will be considered income when paid, whether or not actually withdrawn.

I

■ "Whether a modification of a spousal support order is warranted depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown." (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 357-358 [236 Cal.Rptr. 543].) An abuse of discretion occurs "where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances." (*In re Marriage of Smith, supra,* 225 Cal.App.3d 469, 480, citations and internal quotation marks omitted.)

There is no dispute on appeal that the court's finding of a decrease and fluctuations in Robert's income constituted a change in circumstances justifying a modification. ■ However, Mary Jane contends the trial court's order constitutes an improper delegation of judicial authority to the special master to set spousal support. We agree.

In *In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 817 [161 Cal.Rptr. 879], the court invalidated as "an improper delegation of judicial power to a subordinate court attaché" a provision which authorized a family therapist supervising court-ordered visitation rights to alter the visitation schedule "in any way she deemed reasonable and necessary." The *Matthews* court relied on *Washburn v. Washburn* (1942) 49 Cal.App.2d 581 [122 P.2d 96], in which the court reversed an order transferring custody of two minor children from the mother to the father based only on a report by a domestic relations investigator. (*In re Marriage of Matthews, supra,* 101 Cal.App.3d at p. 816.) The *Washburn* court held, and the California Supreme Court reaffirmed in *Fewel v. Fewel* (1943) 23 Cal.2d 431, 436 [144 P.2d 592], "that the power of decision vested in the trial court may not be delegated to investigators or other subordinate officials or attachés of the court." (*In re Marriage of Matthews, supra,* 101 Cal.App.3d at pp. 816-817.)

---

empowered to decide the result of the game or to make recommendations to that end to the trial court.

Like the therapist in *Matthews* and the investigator in *Washburn*, the special master in this case was not merely gathering data, but was making factual determinations (monthly income, business expenses and tax information) which were necessary to develop the factual financial information to input into the computer program. As indicated previously (*ante*, fn. 2), the level of animosity between the parties and counsel in this case certainly justified the appointment of a special master, and the appointment itself was not, under the circumstances, an abuse of discretion. However, absent a stipulation by the parties, the special master could not be empowered to make binding factual findings or judicial determinations.[5] The delegation to the special master of authority to determine what business expenses to allow as deductions from income for Robert, to make tax determinations and to adjust for extraordinary tax circumstances he accepted constituted an improper delegation of judicial authority. Where a reference to a special master is made on the court's own motion, the court itself must make these determinations, usually upon the receipt of a report containing findings and recommendations of the special master which the court may either adopt as its own or modify as appropriate. Of course, if the reference is by agreement of the parties, the parties can stipulate to the special master making determinations which otherwise would be an unlawful delegation of judicial authority.

## II

Mary Jane next contends the trial court erred in several respects when it set out the method for determining the amount of spousal support due each month. Initially, she maintains the court failed to consider her needs, specifically her alleged deteriorating health, limited health insurance and medical expenses. On the contrary, in 1987 the court found her future medical needs and health conditions were known and considered at the time of the original support order and were provided for by the stipulated judgment. From 1987 to the time of the hearing, her medical and dental expenses had increased by only $15 per month. If there is any future change in this regard, she may of course move for a modification of support.

■ Mary Jane contends it was an abuse of discretion or an improper delegation of judicial authority to order the special master to determine the

[5]The best and least expensive method of resolving disputes such as this one, is for the parties to stipulate not only to the appointment of a special master, but also that the special master be empowered to determine the issues either as an arbitrator, as a judge pro tempore pursuant to article VI, section 21, of the California Constitution, or by reference by agreement of the parties pursuant to Code of Civil Procedure section 638. Given the degree of animosity involved here, such a stipulation would most likely have been impossible to obtain. Under those circumstances, the court has little option except to retain the case or make a reference on its own motion pursuant to Code of Civil Procedure section 639.

monthly amount of future spousal support by the use of the standard Dissomaster default computer program. The court must exercise its discretion in setting or modifying permanent spousal support by consideration of all appropriate factors under Civil Code section 4801, subdivision (a),[6] and the weight to be given to those which are applicable. "A motion for modification of spousal support may only be granted if there has been a material change of circumstances since the last order." (*In re Marriage of Smith, supra*, 225 Cal.App.3d at p. 480, citation omitted.) For this reason, it would constitute an abuse of discretion for the trial court simply to substitute the use of a computer program for the required consideration and appropriate weighing of the statutory factors.

In this case the trial court found that a decrease in and projected fluctuations of Robert's income constituted the requisite change of circumstances. Accordingly, the court attempted to fashion a just, equitable and relatively inexpensive method of calculating future support because the income of the parties will vary from month to month. Mary Jane does not identify any statutory factor as to which evidence was submitted that the trial court failed to consider.

It seems clear the trial court determined that in this case the computer program offered the fairest and least expensive method of fixing future spousal support given the fluctuating nature of each party's income. There is no indication that the trial court used this computer program as a substitute for judicial discretion or in lieu of considering the factors prescribed by section 4801, subdivision (a), on an across-the-board basis for setting or modifying permanent spousal support. Under the facts of this case, we cannot say the court abused its discretion in directing the use of the computer program for monthly adjustments in spousal support as monthly income fluctuated. Should there be future changes of circumstances, other than fluctuating income, or if income should stabilize, nothing in the challenged order precludes either party from bringing another motion to modify.

## III

■ Mary Jane's next claim of error is that the court's order considering accruals to retirement plan funds as income available for support only to the extent that they were withdrawn was an abuse of discretion. She claims the court should not have precluded consideration of earnings Robert had previously placed in retirement and annuity accounts, and the accruals on those accounts, until such time as he chooses to withdraw them. These plans were awarded to Robert as his share of community property, or were sums

---

[6]Unless otherwise indicated, all further statutory references are to the Civil Code.

accumulated during the period Robert was paying Mary Jane the court-ordered spousal support and were set aside by him for his retirement. Mary Jane cites no authority requiring him to withdraw funds at her convenience.

It is true that in assessing a party's ability to pay spousal support, a court may consider investment income. (*In re Marriage of Tapia* (1989) 211 Cal.App.3d 628, 631 [259 Cal.Rptr. 459].) "The existence and not the source of sums of money or services available is the relevant factor." (*Fuller* v. *Fuller* (1979) 89 Cal.App.3d 405, 410 [152 Cal.Rptr. 467].) The issue in *Tapia* and *Fuller* was whether a court awarding child or spousal support should consider the income of a party's nonmarital partner to the extent it reduced his living expenses and thus affected the amount of money he had available to pay support. Neither *Tapia* nor *Fuller* mandates consideration of accruals in an accumulating retirement plan before there are any withdrawals.

Mary Jane cites *In re Marriage of Kennedy* (1987) 193 Cal.App.3d 1633 [239 Cal.Rptr. 151] for the proposition that the court should treat retirement benefits that a party is eligible to receive but chooses not to draw as a potential source of spousal support.[7] It is hard to see why. The *Kennedy* court held it was an abuse of discretion to consider the amount a party could be earning from capital assets awarded at dissolution had she made income-generating investments. (*Id.* at pp. 1638-1641.) Furthermore, the court suggested, without deciding, that the trial court probably did not have the authority to order a party to invest her share of the community assets in income-producing property. (*Id.* at p. 1640 & fn. 3.) To the extent it is at all analogous, *Kennedy* supports the trial court's refusal to require Robert to withdraw his retirement funds or to consider them as income until he does so.[8]

Mary Jane cites no authority for her claim that it is unfair to consider as income her IRA withdrawals as well as Robert's. She argues that as her

---

[7]The parties' community property interests in retirement benefits were awarded to each of them in the original judgment. Here, we deal solely with the issue of whether accruals to one party's retirement plans must be considered as income for purposes of spousal support before being withdrawn. Of course, a nonemployee spouse receiving his or her community interest by an in-kind division of the retirement plan benefits is entitled to begin receiving those benefits when the employee is eligible to retire and begin drawing them. This right cannot be defeated by the employee continuing to work. (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418 [174 Cal.Rptr. 493, 629 P.2d 1].)

[8]Mary Jane twice states that the *Kennedy* court "held" a trial court "must" consider "the actual rate of return which a spouse's assets generate." In fact, the court said in dictum, "We believe it would have been within the court's discretion to consider the rate of return earned on the balance of the property division after purchase of the home." (*In re Marriage of Kennedy, supra*, 193 Cal.App.3d at p. 1641.) The *Kennedy* court had no occasion to consider whether the return on funds invested in a tax-deferred retirement account should be considered as income as it accrues when it is not withdrawn.

support decreases she will be "constrained" to make such withdrawals which, when counted as income, may result in further decreases in support and so on in a downward spiral. It is equally true the court ordered that if Robert withdraws IRA funds (e.g., "for purchase of a motor vehicle, payment of attorney's fees, etc.,") they also will be considered income and result in increased support, constraining him as well. On the record before us, it cannot be said that the trial court abused its discretion in treating both parties the same in this regard.[9]

The extent of the discretion possessed by trial courts to consider, partially consider, or refuse to consider accruals in a retirement plan in fixing spousal support is an issue of first impression in California. We begin with the general rule, as discussed earlier, that modification of a spousal support order rests within the sound discretion of the trial court.

It is clear as a matter of public policy that Social Security benefits are not intended to be the sole source of income upon retirement. Federal and state laws encourage citizens to save for their retirement years by providing tax benefits for contributions to individual retirement plans such as IRAs, Keogh plans, and deferred compensation plans, as well as employer-sponsored plans.[10] These laws provide that contributions to such plans within specified limits are tax deductible, and they penalize withdrawals from such plans prior to the participant's[11] reaching age 59½ as well as penalizing any failure to make minimum withdrawals based upon life expectancy, after the participant reaches age 70½. In the meantime, because of the tax deductibility of contributions to the plans and the nontaxability of earnings and accruals not withdrawn, the growth of the assets in such plans can be significant. The public policy behind this statutory scheme is to assure a flow of income upon retirement, in addition to social security benefits and any other sources of income, for the life of the participant and, perhaps, a surviving spouse or child. (It is obviously beyond the scope of the issues before us to provide a detailed discussion of the law applicable to retirement plans and marital rights therein. For a general discussion of this subject, see Jaffe et al., Employee Retirement and Deferred Compensation Plans on Dissolution of Marriage (Cont.Ed.Bar 1989).)

---

[9]Of course, the parties must begin to withdraw funds from their retirement accounts upon reaching age 70½.

[10]Because the only retirement plans involved here are not employer-sponsored plans, but are the individual plans of Robert and Mary Jane, all further discussion about retirement plans pertains only to individual plans.

[11]We adopt the terminology of federal law. "Participant" is the employee or self-employed person who has a retirement plan. An "alternate payee," for our purposes, is the spouse of former spouse of participant. (See 29 U.S.C. § 1001 et seq.; *In re Marriage of Baker* (1988 204 Cal.App.3d 206 [251 Cal.Rptr. 126].)

The Legislature, in prescribing the factors to be considered by trial courts in fixing permanent spousal support in section 4801, subdivision (a), has provided no specific guidance as to what consideration the court should give to contributions to or accruals in retirement plans. This issue might fall within a number of the factors that are set forth in the statute, particularly the age of the parties and the tax consequences to each party. In any event, the issue would certainly fit within the final factor listed in the statute, "Any other factors which [the court] deems just and equitable."

We conclude that trial courts possess broad discretion when setting or modifying permanent spousal support about whether to consider as income contributions to individual retirement plans by a participant and accruals therein not withdrawn. The Legislature has wisely left this within the court's discretion. It is easy to foresee cases where contributions and accruals are best not considered as income available to pay permanent spousal support.[12] In other cases, it may be appropriate to consider all or part of either or both as being available for permanent spousal support. The trial court is in the best position to determine under the facts and circumstances of each case how its discretion should be exercised, given the dual, but possibly conflicting, public policies of awarding spousal support where appropriate and of encouraging citizens to save for their retirement.[13]

Withdrawals from retirement plans, when made, are treated as ordinary income and taxable as such. However, withdrawals made prior to the time the participant reaches age 59½, in most cases, are not only taxed as ordinary income, but are subject to a 10 percent penalty because of

---

[12]Although not before us, it appears trial courts possess the broadest possible discretion to consider, partially consider, or refuse to consider contributions to retirement plans and accruals in such plans as income available for temporary spousal support. If the plan is an employer-sponsored plan, such as many governmental plans, the contributions may be mandatory and should not be considered. If the parties have regularly made nonmandatory contributions, the court may favor continuing to do so to preserve the status quo pending trial. (See In re Marriage of Winter (1992) 7 Cal.App.4th 1926 [10 Cal.Rptr.2d 225].) On the other hand, if the contributions are not mandated, the financial strain resulting from the separation may be so great that the court will consider, as income available for support, money which would otherwise have been contributed to a retirement plan. Under these circumstances, it may be necessary to forego contributions to the plan temporarily in order for the parties to financially survive until trial.

[13]For example, is it appropriate for the judge to make different orders for temporary spousal support if all circumstances are identical, except that the payee is: (1) self-employed with a gross income of $5,000 a month from which he or she regularly makes $1,000 monthly tax deductible contributions to a Keogh plan, (2) employed with a gross income of $4,000 where the employee makes no contributions to a retirement plan sponsored and fully funded by the employer, or (3) employed with a gross income of $4,000 after a mandatory monthly contribution to the employer's retirement plan which is not taxable as income? Should the order for spousal support be identical in each case?

withdrawal prior to normal retirement age. For this reason, it would appear to be an abuse of discretion to order an amount of spousal support based on funds in a retirement plan which if withdrawn, would be subject to this penalty. Where the participant is making nonmandatory contributions to a retirement plan, it should be within the discretion of the trial court to consider whether those contributions in whole or in part, even though tax deductible if made, should or should not be considered as income available for spousal support. Additionally, during the timeframe within which a participant has the option to draw funds from the retirement plan without penalty, that is between ages 59½ and 70½, but is choosing not to do so, the court should have discretion as to whether or not to impute reasonable withdrawals as additional income for purposes of fixing spousal support, but should do so weighing the public policy favoring provision for one's retirement by allowing funds in the plan to accrue tax free, against all other circumstances in the case. This is especially pertinent where, as here, it would appear that the payor will soon retire at which time his ability to pay spousal support will be based upon income which, for the most part, will be produced by his retirement plans.

Additionally, once the participant reaches age 70½, the court possesses discretion to consider as income available for spousal support an amount greater than the statutorily mandated minimum withdrawals. However, the court must be cautious in doing so, recognizing that the statutory scheme is intended to provide retirement income for the life expectancy of the participant and, perhaps, an alternate payee. The trial court is obviously in the best position to make these decisions and appellate courts should be reluctant to interfere with its decisions.

Thus, we hold that the trial court possesses broad discretion to determine whether to consider as income available for spousal support purposes contributions made by a participant to his or her retirement plan, as well as accruals or accrued earnings of that plan which are not withdrawn. No bright line can be drawn, although it would take extreme circumstances to justify ordering a payor of spousal support to withdraw funds from his or her retirement plan prior to age 59½ and incur not only the income tax liability thereon, but also the additional 10 percent penalty.

IV

It is not true, as Mary Jane contends, that the trial court's methodology eliminates the changed circumstances requirement for future support modification. The challenged order was fashioned in response to a showing that Robert's income had substantially decreased since the prior order and the

income of the parties could fluctuate from month to month. It does not preclude further modification if circumstances regarding any of the statutory factors change again, or when Robert fully retires. The change of circumstances referred to occurs "since the last order." (*In re Marriage of Smith, supra,* 225 Cal.App.3d at p. 480.) The monthly calculations ordered by the trial court are not themselves modification orders, as Mary Jane seems to believe. They do not purport to take into account any changes other than the monthly fluctuations in the parties' incomes.

## V

Finally, Mary Jane asks us to remand the matter to the trial court to determine her right to attorney fees on appeal pursuant to section 4370. Of course, "a remand order is unnecessary because section 4370 gives the trial court power to make such an award without our direction." (*In re Marriage of Colvin* (1992) 2 Cal.App.4th 1570, 1582 [4 Cal.Rptr.2d 323].) But Robert urges us to determine that Mary Jane is not entitled to attorney fees because "the facts clearly establish" she has no need therefore. (See *In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 78 [190 Cal.Rptr. 104].) He points to her trial testimony that she was withdrawing $500 per month from an IRA account to pay her attorneys.[14]

"The fact that the party requesting an award of attorneys' fees and costs has the resources from which he or she could pay his or her own attorneys' fees and costs is not itself a bar to an order that the other party pay part, or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 4370.5, subd. (b).)

Robert correctly reports that "the issue of attorneys' fees at the trial level was substantially litigated," but this is not to say the issue of attorney fees on appeal was litigated at the trial level. It was not. As Robert himself notes, no request for appellate fees was made below.

## VI

In his cross-appeal, Robert contends the trial court erred by not placing a $1,600 cap on monthly spousal support to be established by the special

---

[14]Although the trial court in its tentative decision stated its intention not to include this amount in calculating Mary Jane's monthly income because, "The court shall not 'force' her to expend those funds, any more than it will force [Robert] to do so," the final order does not contain this exclusion.

master. He notes that in response to his motion to reduce support, Mary Jane requested only that the 1987 order remain in full force and effect, and did not show that the $1,600 awarded therein was insufficient to meet her needs at a level commensurate with the marital standard of living.

"As a general rule, issues not properly raised at trial will not be considered on appeal." (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 618 [222 Cal.Rptr. 276].) Robert did not ask that such a cap be imposed, even when the possibility that Mary Jane would receive more than $1,600 in some months was discussed in court. Furthermore, as Mary Jane points out, such a cap would enable Robert, to the extent he can control when he receives income, to make a withdrawal in a single month providing his full annual income and only have to pay $1,600 for the entire year. Robert acknowledges that, in fact, he would never be required to pay more than $19,200 in a single year, the total of $1,600 a month paid for 12 months under the formula ordered by the trial court. Since this issue was not raised before the trial court, we decline to consider it.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion. On remand the trial court shall determine Mary Jane's right to attorney fees and costs on appeal, if any.

Peterson, P. J., and Haning, J., concurred.