Filed 2/8/22  Marriage of K.R. and L.R. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of K.R. and L.R. | D078436 |
| K.R., Respondent, v. L.R., Appellant. | (Super. Ct. No. DN184283) |

APPEAL from an order of the Superior Court of San Diego County, Patti Ratekin, Commissioner.  Affirmed.

Dawn M. Dell'Acqua and Ariel Barbre for Appellant.

Fleischer & Ravreby, Myra Chack Fleischer and Tana Landau for Respondent.

## INTRODUCTION

L.R. (Mother) appeals from an order granting a request from K.R. (Father) to modify custody and visitation orders pertaining to their 15-year-

old minor child (the child). Mother contends the trial court erred by failing to consider whether Father had demonstrated a significant change in circumstances before modifying a final custody determination, entered pursuant to *Montenegro v. Diaz* (2001) 26 Cal.4th 249 (*Montenegro*). She further asserts Father presented insufficient evidence of changed circumstances to warrant modification or that the modification was in the child's best interest. Mother also asserts the court erred by refusing to enforce the court's prior order that the parents use a parenting coordinator.

We conclude the trial court's order altered the parenting schedule but did not change custody and, thus, the court was not required to make a finding of changed circumstances. Finding Mother's other contentions also lack merit, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father married in 1999. They had a child together while living in Australia in 2005, but moved to the United States approximately four months later. Mother and Father separated in 2015. Now 17, the child was 15 years old at the time of the challenged custody and visitation orders.

In 2016, Mother sought a move-away order allowing her to take the child to Australia. On May 9, 2017, after an 8-day bifurcated trial on custody, the trial court denied Mother's move-away request and entered judgment with the court's initial custody determination. The court found the parents did not have a productive relationship and Mother seemed to believe she had a superior right to make decisions related to the child. The court also had concerns about Mother's ability to follow court orders and Mother's behavior towards school administrators. The court awarded Father sole legal custody regarding education decisions for six months. As to all other decisions, Father was to give Mother 10 days' notice before acting on any non-

2

emergency decision. Adopting the recommendations of Family Court Services (FCS) as to physical custody, the court ordered Mother and Father share equal custodial time but, if Mother moved to Australia, Father was to have physical custody of the child during the school year.

The next day, on May 10, 2017, Mother filed a Request for Order (RFO) seeking an order to allow her to take the child on a 4-week summer vacation to Australia. At the hearing in June, the trial court denied Mother's request. The court had previously appointed minor's counsel and ordered that minor's counsel remain on the case at Mother's expense. At a subsequent hearing in September, the court awarded Father with sole legal custody and temporary physical custody, with Mother parenting the child on the first, third, and fourth weekends. The court's order prohibited Mother from emailing or going to the child's school "at all and for any reason."

One year later, the parties reached a settlement agreement on custody and visitation after participating in private mediation. In November 2018, the trial court issued a findings and order after hearing (FOAH) adopting and incorporating the parties' settlement agreement. The court ordered the "agreement to be the parties' final custody determination pursuant to Montenegro vs. Diaz." Pursuant to the *Montenegro* order, Father retained legal custody "over educational and extra-curricular decisions," while both parents shared legal custody over healthcare. Father would provide the primary residence of the child during the school week until after spring break in 2019, at which point the parents would share physical custody on a 5–2–2–5 parenting schedule, if there were "no police calls, CPS calls, or court appearance[s]." In addition, based on the parents' agreement, the court ordered the parents to use Dr. Lori Love as a parenting coordinator to assist

3

them in making decisions and to monitor their communication concerning the child.

Despite the settlement, the parties continued to disagree over custody. In August 2019, another RFO by Mother seeking changes to the custody agreement came on for a hearing.[1] When Father's counsel noted there was a *Montenegro* order in place, the court asked Mother, "What's the change of circumstance?" Mother's counsel asserted Father was not complying with the custody arrangement set forth in the settlement agreement. She further asserted Father was withholding the child from therapy and asserted Mother needed "more decision-making power in terms of the legal custody." The court continued the matter for minor's counsel to speak with the child and ordered the parents to attend FCS mediation. Before concluding the hearing, the court stated that it was concerned the parents could not successfully co-parent the child and asked minor's counsel if the case was "anywhere close to third-party placement." Minor's counsel responded, "I don't think we're close to third-party placement, but I think that we're close to possibly supervised visitation for one parent or removal of custody from one parent."

Mother and Father participated in FCS mediation in October 2019. In its November 8, 2019 report to the trial court, the FCS counselor noted that Mother expressed concerns about minor's counsel, whom she accused as unethical and not responsive to Mother, and the parent coordinator, whom she accused as lacking neutrality because the coordinator was married to the child's former therapist. The FCS counselor also spoke with the child. The child did not express any concerns about either parent. He said he wanted to

---

1    The record on appeal is incomplete. For instance, the transcript from the August 2019 hearing is included, but the underlying RFO is not.

4

maintain the current custody schedule with a couple of minor adjustments. He "reported having challenges in his relationship with his attorney" and said, "he does not feel like he needs therapy."

The FCS counselor expressed concerns "that the father's proposal to significantly reduce the mother's parenting time is not based [on] what is best for [the child], but more about his fears and frustration with [Mother] and a way for her to have consequences by losing time with [the child]." The counselor stated, "[w]hile many involved professionals [may] be bothered by the mother's actions over the years, [she] is more interested in [the child's] experience of [Mother], and he asserts that he is happy and comfortable with her. Regardless of the specificity of court orders, the parents will likely continue to find sources of conflict and create opportunities to bend the language to suit their desires." She recommended the parents share joint legal custody and joint physical custody on a 5–2–2–5 schedule. She further recommended, in paragraph 9B, that: "The parents shall utilize the services of a parent coordinator who is not affiliated with other involved professionals in this case. The parent coordinator shall have the authority to clarify boundaries with the parents, and make decisions on disputed issues as deemed appropriate by the [c]ourt."

In December 2019, at the hearing on Mother's RFO, Father's counsel told the trial court Mother had agreed to use Dr. Love, "[b]ut now she won't do that." Minor's counsel told the court it was problematic the way the parents continued to interact with one another and stated, "there needs to be some decision about legal custody because there continues to be these issues." She also told the court the parents were calling her instead of the parenting coordinator.

During the hearing, a dispute arose regarding the trial court's previous order that Mother not contact the child's school. Mother insisted the order no longer applied because the child was now at a different school. The court noted again that Mother had a habit of violating court orders. It explained that it had tried to control Mother for over four years, but had been unable to resolve the conflicts, in part because Mother did not follow the court's orders. With the parties' consent, the court called the principal of the child's school from the bench. The principal confirmed the school continued to have concerns over Mother's behavior, and that Mother had videotaped staff members in violation of the previous no-contact order. At the court's request for input, minor's counsel stated, "I think that the time of -- when we had any level of peace in this case was when [Father] had sole legal custody." At the conclusion of the hearing, the court awarded Father sole legal custody. It maintained joint physical custody and the previous 5–2–2–5 schedule.

A FOAH for the December 2019 hearing was entered July 10, 2020, which reflected that the court adopted the November 8, 2019 FCS recommendations with some modifications. As noted, the court granted Father sole legal custody and maintained joint physical custody with the previous 5–2–2–5 parenting schedule. However, the court omitted paragraph 9B from the FCS recommendations and did not order the parties "to utilize the services of a parent coordinator."

The conflict over custody between Mother and Father continued unabated. On July 9, 2020, before the last FOAH was even entered, Father filed an ex parte application seeking an emergency court order that Mother take the child to his football practice or, alternatively, for an order shortening time on his RFO seeking modification of custody and visitation. In his supporting declaration, Father averred the child had asked to play football at

6

school, but Mother was refusing to take him to summer practices because they were not mandatory. He also raised a number of other concerns, including that Mother criticized the child for his choice of sports and schools and generally interfered with his schooling and extra-curricular activities. Father stated, "I am requesting the Court modify the current order such that I have [the child] during the school week as I believe this will be in his best interest given [Mother's] continued pattern of behavior to interfere with school activities, inability to coparent, refusal to transport him to school, continued threats and negative comments regarding the school he is attending, refusal to foster relationships with his friends and teammates, and refusal to assist in homework and remote learning." The court ordered Mother to take the child to football practice and set a hearing for Father's RFO on July 30, 2020.

At the July 30 hearing, Mother appeared without counsel. She said she thought the hearing was solely about the football issue, and the trial court clarified that Father was asking to change the custody arrangement. Minor's counsel informed the court that she had talked to the child, and she was concerned the child was trying not to be disloyal to either parent and was not really voicing his own desires. Minor's counsel believed the child needed to get back into therapy and that it could be helpful for the family to return to FCS mediation for further insight. The court ordered the parties to attend another FCS mediation and continued the hearing to August 25.

In its report dated August 12, 2020, the FCS counselor stated the child was well adjusted to the parenting schedule and had a strong relationship with both parents. The counselor believed the child's schedule "should not involve much coordination between the parents" because, now that the child was in high school, his extra-curricular activities would be scheduled through

7

the school, and he would be more capable of managing his own schedule. The counselor stated Father acknowledged that his request to modify custody and visitation was based on his expectation of continued problems with Mother, and that she did "not consider that a reason to justify making such a significant change to the child's established routine." Accordingly, the counselor recommended the parents maintain the current custody arrangement. However, she went on to note that "the pattern of the parents returning to the court to resolve minor disputes" suggested a need for "the [c]ourt [to] consider final orders in this case to minimize the strain on the child from being in the middle of the parents' disputes."

Father's RFO was heard on August 25, 2020. Minor's counsel reported the child wanted to maintain the current custody schedule, but she reiterated that the child struggled to know what he really wanted. She explained: "You know, on one hand, I feel like something has got to change, something has got to give. We can't keep doing the same thing over and over again. On the other hand, I've got an obligation to tell the Court what my client's preference is, and that's to maintain the current parenting arrangement." The court acknowledged the child's stated preference but said, "I don't think he understands what is going on with him." Minor's counsel also suggested that a parenting coordinator would be helpful. The court disagreed and stated, "[t]his case is not suitable for a resolution outside of court."

The trial court granted Father's request to have physical custody of the child during the school week. The court explained, "I have tried everything in this case to protect [the child] from the conflict, and I'm not able to do it, so I'm putting in a parenting plan that I believe is in his best interest, even though he doesn't know it." Regarding the parenting coordinator, the court

8

stated, "I don't have the authority to put in a parenting coordinator. And I'm not going to."

In a FOAH entered the next day, August 26, 2020, the trial court ordered that Father have sole legal custody and the parents continue to share joint physical custody. Mother would parent the child on the first, second, fourth, and fifth weekends during the school year. Mother and Father would continue to parent the child on the previous 5–2–2–5 schedule in the summers, and they would continue to have equal parenting time under the holiday schedule. Mother timely appealed from the August 26, 2020 FOAH.

## DISCUSSION

Mother contends the trial court's order modified the final custody determination entered in November 2018 and, thus, required the court to find that there had been a significant change in circumstances. She argues both that the court failed to make the requisite finding and that there was insufficient evidence to support such a finding. She further contends there was insufficient evidence the change was in the child's best interest. Finally, she asserts the trial court erred by failing to enforce the prior order incorporating the parents' agreement to use a parenting coordinator. As we shall explain, Mother's contentions lack merit.

## I.

*The Trial Court Altered the Parenting Schedule But Did Not Change Custody, Thus the Changed Circumstances Rule Did Not Apply*

It is well established that "[o]nce the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the

9

primary caretaker—weigh heavily in favor of maintaining' that custody arrangement. [Citation.] In recognition of this policy concern, [the California Supreme Court has] articulated a variation on the best interest standard, known as the changed circumstance rule, that the trial court must apply when a parent seeks modification of a final judicial custody determination. [Citations.] Under the changed circumstance rule, custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that *a different custody arrangement* would be in the child's best interest." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956, italics added.)

"Unlike a change in custody, *an alteration in a parenting or visitation schedule* does not cause a disruption in ' "established patterns of care and emotional bonds with the primary caretaker." ' " (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1079, italics added.) Thus, courts have consistently held the changed circumstance rule does not apply "where a court's order does not change *custody*, but rather, alters a *parenting schedule*." (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1379 (*Enrique M.*); accord *In re Marriage of Lucio* at p. 1080; *In re Marriage of Birnbaum* (1989) 211 Cal.App.3d 1508, 1513 (*Birnbaum* ).)

In *In re Marriage of Burgess* (1996) 13 Cal.4th 25 (*Burgess*), our high court concluded the changed circumstance rule did apply in a case where a parent sought a change in *custody* based on the other parent's decision to relocate. (*Id.* at pp. 38–39.) However, the Court stated that "the trial court has broad discretion to modify orders concerning contact and visitation" and "such modifications of orders regarding contact and visitation may obviate the need for costly and time-consuming litigation to change custody." (*Id.* at p. 40.)

10

Like the case before us, *Birnbaum* involved a dispute between the parents over school week custody. (*Birnbaum, supra,* 211 Cal.App.3d at p. 1513.) Pursuant to an agreement entered into their judgment of dissolution, the parents shared joint custody, but the children lived with the mother during the school week. (*Id.* at pp. 1510–1511.) Mother changed the children's school, and both parents requested that the court modify the previous order and grant him or her sole physical custody. (*Id.* at p. 1511.) The court ordered that the children live with the father for three out of every four weeks during the school year. (*Id.* at p. 1512.) Although the arrangement gave the father significantly more custodial time, the court determined the changed circumstances rule did not apply because "[a]t most there has been a change in what the trial court termed the 'co-parenting residential arrangement.'" (*Id.* at p. 1513.)

More recently, in *Enrique M.*, this court addressed a situation in which the trial court applied the changed circumstance rule to deny a father's request to alter a parenting schedule. (*Enrique M., supra,* 121 Cal.App.4th at p. 1378.) As here, the parties had ongoing disputes regarding the child's schooling and the associated parenting schedule. (*Id.* at pp. 1374–1375.) The court had entered a stipulated custody order under which the parents were to share joint legal and physical custody of the child. (*Id.* at p. 1375.) Once the child entered school that July, the father was to parent the child on the first, third, and fifth weekends of the month, and was to have additional parenting time on Thursday evenings. (*Ibid.*) The parents were to share custody evenly over school breaks. (*Ibid.*) A couple of months later, the father filed a motion requesting the schedule be modified to include overnights with him every Tuesday and Thursday. (*Id.* at p. 1376.) The trial court said it would be inclined to change the schedule if it were considering the matter in the first

11

instance, but denied the motion because, in its view, there had not been a substantial change in circumstances. (*Ibid*.) After considering *Birnbaum* and *Burgess*, this court concluded the trial court had erred. (*Id*. at p. 1382.) As we explained, the changed circumstances rule does not apply to a request to change the parenting schedule that is "not on a par with a request to change physical custody from sole to joint custody, or vice versa." (*Ibid*.)

Similarly, here, Father sought a change in the parenting schedule based primarily on concerns regarding the child's educational and extra-curricular activities. To alleviate those concerns, the trial court altered only the parenting schedule during the school week. As in *Birnbaum* and *Enrique M*., that change in parenting schedule was not on par with a change in *custody*. The modified parenting schedule has Mother parenting the child on the first, second, fourth, and fifth weekends during the school year, as opposed to the previous 5–2–2–5 schedule. But the parents were to continue with the existing 5–2–2–5 schedule for summers, as well as the existing shared holiday schedule. This new arrangement may have given Father more time with the child during the school year than the previous parenting schedule, but "[e]qual division of a child's time between the parents is not the hallmark of joint custody." (*Birnbaum, supra,* 211 Cal.App.3d at p. 1515.) This is particularly true here, where the child is in high school and actively involved in extra-curricular activities. Much of the child's time during the school week will be spent not with the custodial parent, but rather at school, or attending school-sponsored activities.

Mother asserts, to the contrary, that Father was seeking a change in custody, and not simply a modification of parenting time. She points out that Father checked a box on his RFO form indicating he was seeking a change in custody. As the high court in *Burgess* explained, even when a parent

12

requests a change in custody, the trial court can avoid a change in custody by instead modifying orders regarding contact and visitation. (*Burgess, supra,* 13 Cal.4th at p. 40.) Thus, we look to the trial court's order, not Father's request.

Turning to the trial court's order, Mother continues to place significant emphasis on form over substance. She argues the order was a change in custody because trial court wrote "FATHER" under the heading "Physical custody to" on the Judicial Council FL-341 form of the FOAH. However, the court attached the pages of the FCS recommendations it was adopting to the FOAH, which pages unambiguously stated that "[t]he child's physical custody shall be shared." Further, in describing the parenting schedule, the attached pages state, "[t]he parenting of the child shall be shared as follows" and set out the specifics of the new schedule. Although the new schedule gave Father more custodial time during the school week, it did not remove custody from one parent and give it to the other. (See *Enrique M., supra,* 121 Cal.App.4th at p. 1379; *Birnbaum, supra,* 211 Cal.App.3d at pp. 1511–1512.) Nor was it "on a par with a request to change physical custody from sole to joint custody, or vice versa." (*Enrique M.,* at p. 1382; accord *In re Marriage of McKean* (2019) 41 Cal.App.5th 1083, 1088 [changed circumstances finding necessary where court modified previous order granting parents joint legal and physical custody and instead awarded sole legal and physical custody to one parent].)

We conclude the changed circumstance rule did not apply to the trial court's order altering the parenting schedule. Because we conclude the trial court was not required to make a changed circumstances finding, we need not address Mother's contention that there was insufficient evidence to support such a finding.

## II.

*Substantial Evidence Supports the Trial Court's Finding That the Change Was in the Child's Best Interest*

We now consider whether there was substantial evidence to support the trial court's finding that the change in parenting schedule was in the child's best interest. "The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*Burgess, supra,* 13 Cal.4th at p. 32.) We start with the presumption, as we must, that the trial court's order is correct. (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.) It is Mother's burden to affirmatively show error on appeal. (*Ibid.*) "[A]s is true in all appellate reviews, and most emphatically in this type of controversy, it is not the function of this court to reweigh conflicting evidence and redetermine findings." (*Birnbaum, supra,* 211 Cal.App.3d at p. 1513.) Instead, we accept the factual findings of the trial court so long as they are supported by substantial evidence. (*Ibid.*) " 'Further, the testimony of a single witness, even the party himself may be sufficient.' " (*Ibid.*)

It appears from the record that this has been a highly contentious dispute. The parties have litigated custody numerous times over the previous five years, in front of the same bench officer. By then, the commissioner had gained extensive experience and familiarity with the family and their case. In reaching the decision that is now being challenged, the commissioner explained, "I have tried everything in this case to protect [the child] from the conflict, and I'm not able to do it, so I'm putting in a parenting plan that I believe is in his best interest, even though he doesn't

14

know it." Substantial evidence supports the court's finding that the modification of the parenting schedule was in the child's best interest.

Mother asserts the modified parenting schedule was not in the child's best interest primarily because the order was not consistent with the recommendations of minor's counsel or the FCS counselor. We are not persuaded. As an initial matter, Mother presents no authority that the court was bound by either recommendation; it was not. Moreover, Mother fails to acknowledge that both minor's counsel and the FCS counselor stated that the constant conflict between the parents was harming the child. Minor's counsel said she felt duty-bound to inform the court of her client's stated position, but also expressed her concerns that the child was trying to appease both parents and was not voicing his own desires. Minor's counsel also stated the child needed therapy, where he did not before, as a result of the parents' conflict. So despite the child's stated preference, minor's counsel told the court, "I feel like something has got to change, something has got to give. We can't keep doing the same thing over and over again." The court agreed.

The FCS counselor likewise acknowledged "the pattern of the parents returning to court to resolve minor disputes" and "the strain on the child from being in the middle of the parents' disputes." In fact, she recommended the court issue a final order to provide the child with stability and to minimize that strain. In doing so, it seems the FCS counselor did not appreciate that the court *had* issued a final order based on the parents' stipulated agreement, only for Mother to return to court less than a year later to request a change. The FCS counselor also stated that Father's expectation of continued problems was not a reason to justify a significant change to the child's established routine. Considering the full history of the case, the trial court disagreed and concluded Mother's demonstrated inability to follow orders or

15

co-parent effectively was a serious concern that was negatively impacting the child.

Based on those findings, the trial court determined it would be in the child's best interest to remain with Father during the school week. We find no abuse of discretion in the court's determination that the modified parenting schedule was in the child's best interest. As we have noted, the schedule changes were limited to the school week. Much of the child's time during the week will be spent at school, and participating in school-sponsored extra-curricular activities, and not with either parent. Moreover, the court had previously precluded Mother from contacting the school based on her behavior. Given that ruling—which Mother does not challenge on appeal— Father will likely be more capable of supporting the child with respect to these school-based activities.

Again, we acknowledge this is a contentious case, and that Mother has consistently disputed Father's allegations. However, the record establishes the trial court considered the evidence and argument presented by both parties. The court was entitled to credit Father's testimony[2] over Mother's, and we will not reweigh conflicting evidence or redetermine factual findings on appeal. (See *Birnbaum, supra,* 211 Cal.App.3d at p. 1513.)

---

[2] Mother contends we should not consider evidence, including Father's declaration, "pertaining to other proceedings which predate the orders within the scope of the August 2020 order." To the contrary, "the court must consider the past conduct of the parents in fashioning a custody order that serves the best interests of the children." (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1094.) Moreover, as noted, Father filed the ex parte application and the RFO on the same day and cross-referenced the associated declaration in the RFO. The trial court then clarified the scope of the proceedings for Mother and allowed her to submit a response.

In sum, we conclude substantial evidence supports the trial court's determination that the change to the parenting schedule was in the child's best interest.

III.

*Absent the Parents' Agreement, the Court Did Not Have Authority to Order the Appointment of a New Parenting Coordinator*

Last, we consider Mother's assertion the trial court erred by failing to enforce the prior order incorporating the parties' agreement to use a parenting coordinator. The court concluded it did not have the jurisdiction to order a parenting coordinator absent agreement of the parties. Mother asserts the court's conclusion was incorrect, but provides no authority to support her position. To the contrary, the court may not lawfully delegate its judicial authority to " 'subordinate officials or attaches of the court' " to make binding determinations absent an agreement of the parties. (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 7.)

Mother contends the trial court had jurisdiction to make orders regarding a parenting coordinator because "it was already a court order." That is not precisely correct. Mother overlooks the fact that the court, in its FOAH entered July 10, 2020, had omitted the FCS recommendation in paragraph 9B for the parties to "utilize the services of a parent coordinator" in its orders. The July 10, 2020 FOAH is not at issue in the present appeal. Thus, at the time of the August 25, 2020 hearing, there was not a court order in place requiring the parents to use a parent coordinator. Although the parents had previously agreed to use Dr. Love, Mother subsequently refused to work with Dr. Love and continues to assert, even on appeal, that the court needed to facilitate selection of a new coordinator. Absent an agreement of

17

the parents, the court did not have authority to order the appointment of a new parenting coordinator.

## DISPOSITION

The order is affirmed.  Father is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

DO, J.

WE CONCUR:


HALLER, Acting P. J.


GUERRERO, J.