[S. F. No. 14150. In Bank.—June 30, 1933.]

KATHERINE SECONDO, Respondent, v. MITCHELL SECONDO, Appellant.

Wyckoff, Gardner & Parker and Wyckoff & Gardner for Appellant.

John J. Batistich for Respondent.

Anthony S. Devoto, as *Amicus Curiae* on Behalf of Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, First Appellate

District, Division Two. Upon further consideration of the cause we adopt the opinion of Mr. Justice Sturtevant as the opinion of this court. It reads as follows:

"On July 11, 1927, the plaintiff commenced an action to obtain a divorce from the defendant and in her complaint she charged him with extreme cruelty. He answered the complaint and at the same time he filed a cross-complaint making the same charge against his wife. She answered the cross-complaint and on the issues so framed a trial was had before the trial court sitting without a jury. The court made findings in favor of the plaintiff and from the judgment entered thereon the defendant has appealed, and has brought up typewritten transcripts. The record consists of nearly fifteen hundred pages, but references in the briefs to page or line in the transcript are frequently omitted. Therefore we will confine ourselves to an investigation of that portion of the record to which references have been made.

"The first finding is as follows:

" 'That prior to the commencement of this action, without provocation on part of plaintiff, without any cause, reason or justification, defendant had treated plaintiff with great and extreme cruelty and more particularly in that on the 3rd day of June, 1927, in the residence of plaintiff and defendant at 118 West Lake Avenue in the City of Watsonville, County of Santa Cruz, State of California, defendant repeatedly struck plaintiff upon the head with a blunt instrument, by reason whereof plaintiff sustained a depressed fracture of the skull, necessitating the removal of portions of the skull from the brain, and plaintiff's confinement in a hospital for a period of five weeks thereafter.

" 'That said act of defendant has caused plaintiff great and extreme anguish and mental and physical suffering, and has greatly undermined plaintiff's health and permanently impaired same.'

"Defendant claims that the only evidence of the truth of the allegations to which that finding is responsive is the uncorroborated testimony of the plaintiff. That claim may not be sustained. After the assault and injury complained of occurred, at different times the defendant, the plaintiff and others were in the immediate presence and hearing of each other. On several of those occasions the plaintiff

456

charged the defendant with having committed the acts complained of and he made no denial.

"As a witness in her own behalf the plaintiff recited what she claimed to be the facts regarding the assault. The defendant asserts her testimony was improbable in its nature, contradictory in its terms, and was wholly contradicted by the defendant. All of those attacks were for the consideration of the trier of the facts and are not properly for the consideration of a court of review.

"The defendant attacks subdivisions 2, 3, 4 and 5 of finding number II, which find certain funds to be community property. Before this action was commenced, and at least for a while thereafter, the defendant and his two brothers were partners engaged in conducting a packing house at Watsonville. In the transaction of that business they bought and sold crops of apples. The purchases amounted to thousands of dollars annually. During the same period of time the plaintiff and defendant were engaged in loaning their surplus earnings on promissory notes secured by mortgages. Some of those notes were paid after the commencement of the action. Finding number II, so far as pertinent, is as follows:

"'Plaintiff and defendant were, at the time of the commencement of this action, ever since have been and now are, seized and possessed of certain community property described as follows:

"'1. All of those certain lots, pieces or parcels of land situate, lying and being in the City of Watsonville, County of Santa Cruz, State of California, and particularly described as follows: (describing them).

"'2. The sum of $1200, together with interest thereon, collected by the defendant from Carrie Picanzo under and by virtue of that certain mortgage executed by Carrie Picanzo to Mitchell Secondo recorded in the office of the County Recorder of Santa Cruz County, State of California, in Volume 31 of Official Records, page 352.

"'3. The sum of $500, together with interest thereon, collected by the defendant from James A. Covell et ux., under and by virtue of certain mortgage executed by James A. Covell et ux. to Mitchell Secondo recorded in the office of the County Recorder of Santa Cruz County, State of California, in Volume 23 of Official Records, page 206.

" '4. The sum of $360.89 together with interest thereon, collected by the defendant from Edna S. Bingham et vir., under and by virtue of certain mortgage executed by Edna S. Bingham et vir. to Mitchell Secondo, recorded in the office of the County Recorder of Santa Cruz County, State of California, in Volume 23 of Official Records, page 374.

" '5. The sum of $9136 withdrawn by defendant in 1927 and 1928 from the partnership of Secondo Bros., City of Watsonville, County of Santa Cruz, State of California.

" '6. All furniture, furnishings, fixtures, together with silverware and linens in the former residence of said plaintiff and said defendant at 118 West Lake Avenue in the City of Watsonville, County of Santa Cruz, State of California.

" 'All of the above described real and personal property was at the time of the commencement of this action, ever since has been, and now is community property of plaintiff and defendant.'

"In substance the defendant claims that the effect of subdivisions 2, 3, 4 and 5 was to find that the spouses owned, held and possessed as community property the items mentioned in said subdivisions. He also claims that the items of interest are not supported by the evidence and moreover are a false quantity. The proof does not show that any one of the loans carried interest. However, if it be inferred that they did, and we think the trial court was entitled so to infer, then it would follow that the defendant collected the principal and interest for which he was bound to account to the plaintiff. The defendant contends, and the plaintiff does not cite any portion of the record to the contrary, that there was no evidence as to the amount of the interest collected. As to the principal the defendant admitted he had collected the loan. However, he testified that he had spent the money. At that point the evidence stopped. As to the withdrawals from the partnership the defendant admitted the amount but testified he had spent the money. As to those expenditures the evidence stopped. There is no evidence in the record that the defendant spent a dollar in fraud of the plaintiff's rights. There is evidence that from the time the action was commenced down to the date of the trial the defendant conducted his business as he had done before the action was commenced; that

after the commencement of the action the defendant paid the plaintiff alimony and counsel fees. The order for alimony was $250 per month. That order was made July 25, 1927, and commenced to run August 1, 1927. The findings were signed on August 31, 1929. The record, by inference, shows $4,500 was paid by the defendant in compliance with said order. The amount paid in counsel fees is not clear, but was apparently in excess of $1,000. Whether at the time the action was commenced the plaintiff and defendant had debts outstanding for which the moneys collected were disbursed does not appear. Whether after the action was commenced the defendant suffered losses in transacting his business does not appear. Moreover no effort was made at any time to show to the trial court the amount of personal property on hand and subject to division by the trial court. As the evidence did not show those items of property to be in the hands of the court the claim is sound. (*Van Horst* v. *Van Horst*, 96 Wash. 658 [165 Pac. 886].) In that case, at page 888, the supreme court of Washington said: 'If this were an action for an accounting between plaintiff and defendant, many elements might enter into the case that cannot properly be considered in a proceeding such as this. The court, in making a disposition of the property of the spouses incidental to granting a decree for divorce, is necessarily limited by the amount of property in the hands of the court for division. Palpably it cannot divide that which does not exist. In making provision for the wife in the way of alimony the court is also powerless to compel the husband to pay more than he is able to pay, no matter what his conduct may have been in wasting or dissipating property belonging to the wife.'

■ "Having found the items in subdivisions 2, 3, 4 and 5 of finding number II to be community property, the trial court added them together, and the total, $11,206.89, was declared a lien on the real estate described in finding number III and which the trial court found to be the defendant's separate property. The defendant contends that Civil Code, section 140, is not authority for the creation of a lien on the separate property of the husband to secure the payment to the wife of a share in the community property. The contention is fully sustained by the ruling in *Mayberry* v. *Whittier*, 144 Cal. 322, 326 [78 Pac. 16].

■ "The trial court awarded the custody of the two minor sons to the mother. It made a finding that the defendant might visit said minors at least once a month and spend the day with them in the presence of a probation officer of San Francisco. The defendant claims the provision prescribing that the visit should be in the presence of a probation officer was erroneous. In reply the plaintiff calls to our attention finding number I quoted above. The record shows that at the time of that transaction the sons were not present and were not in any way whatever connected therewith. There is not a particle of evidence in the record that the defendant was otherwise than a kind and affectionate father. The limitation imposed was not, therefore, sustained by the record.

■ "The court made a finding awarding the plaintiff $500 counsel fees in addition to amounts theretofore allowed. The defendant objects to the finding and cites and relies on the rule stated in *Sheppard* v. *Sheppard*, 15 Cal. App. 614, 618 [115 Pac. 751]; *Loveren* v. *Loveren*, 100 Cal. 493 [35 Pac. 87]; *Stampfli* v. *Stampfli*, 53 Cal. App. 126, 132 [199 Pac. 829]. The point is well founded. An examination of the record does not disclose that prior to the date of signing the findings and interlocutory decree any application for counsel fees remained undisposed of. The record showed no necessity for making the order at the time it was made.

■ "The judgment ordered that the costs be paid by the defendant. He asserts the order was in effect double taxation, because theretofore he had been ordered to pay the plaintiff $250 for costs and counsel fees, and that it will be presumed he had made the payment. No cost bill is contained in the record. An examination of the transcript discloses several orders for the payment of counsel fees and costs. However, it does not show how much was incurred for costs and we have no means of separating the items. Therefore the record does not support the contention.

■ "The defendant offered his will in evidence but the objection of the plaintiff was sustained. The will was dated December 31, 1918, and by its terms all of defendant's property was to go, in the event of his death, to the plaintiff. The defendant claims the will was evidence to the effect that when the defendant struck the plaintiff, as recited in finding

number I, on June 3, 1927, the striking was not with the intention of putting her out of the way so that she could not inherit his property. Under the facts we think the court did not err in sustaining the objection to the offer. (*Estate of Anderson,* 185 Cal. 700, 718 [198 Pac. 407].)''

For the reasons indicated, the judgment is reversed and the action remanded to the trial court, with directions to try the issues of fact covered by the following findings: finding II, subdivisions 2, 3, 4 and 5; finding VI; finding IX; and finding X. Finding IV is hereby modified by striking therefrom the words ''in the presence of J. C. Astredo, Chief Probation Officer of the City and County of San Francisco, State of California, or some suitable person designated by him''. The other findings are either unchallenged or fully supported by the record and the issues determined by them should not be retried. Upon retrial of the issues covered by the findings specified above to be retried, the trial court is directed to prepare new findings and conclusions of law not inconsistent with the views expressed in this opinion.