[No. B008602. Second Dist., Div. Four. Oct. 11, 1985.]

CHRISTOPHER CAMACHO, JR., Plaintiff and Appellant, v.
DIANA DAHL CAMACHO, Defendant and Respondent.

Counsel

Mirecki, Cox & Archer and Richard A. Cox for Plaintiff and Appellant.

Ronald Melin Supancic and Elva J. Brinegar for Defendant and Respondent.

Opinion

**WOODS, P. J.**—Christopher Camacho, Jr., appeals the judgment rendered in his suit to establish paternity and determine visitation.

Appellant contends that the trial court erred when it conditioned his right of visitation with his son on (I) his timely payment of child support and (II) undergoing counseling for an indefinite period with a court-approved psychotherapist.

We agree, and reverse as to those portions of the judgment appealed from.

Appellant, and respondent, Diana Camacho, were divorced in 1973. Matthew was born to them in October 1978.

Matthew was born with a heart defect which required surgery when he was 10 months old. Matthew also suffers occasional asthma attacks for which he receives oral medication. At the time of the trial, he was asymptomatic, was not undergoing any treatment, and his physical activities were not restricted in any way. However, in light of his medical history, he requires close monitoring anytime he develops a fever, and prophylactic doses of antibiotics whenever there is an increased risk of infection, such as prior to surgery.

Since birth, Matthew has been reared and cared for by respondent. The parties had no agreement regarding visitation, and visits by appellant were infrequent. Appellant obtained respondent's consent prior to each visit. There were occasions when after obtaining consent, appellant failed to keep the appointment. Appellant was present when Matthew underwent open heart surgery, but not when the cardiac catheterization was performed.

There was also no agreement between the parties regarding payment of child support, and appellant has not paid any. Appellant has not been gainfully employed since his business failed in 1980. Since that date he has lived off of his savings and on proceeds from the sale of properties he owned. At the time of the trial, in September 1983, appellant was in the process of

starting a new business, and testified that he could afford to pay $200 a month in support of Matthew.

Appellant has two other children, an adult son for whom he paid child support for fifteen years, and a five-year-old daughter, Amanda.

In 1982, respondent decided to remarry and informed appellant that she would no longer permit him to visit Matthew. Appellant instituted this action to establish paternity and determine visitation. In response, respondent filed an order to show cause regarding child support. She requested that appellant not be permitted to visit their son; but if permitted, such visitation should be gradual, monitored, and contingent on his undergoing counseling, along with Matthew and herself.

The trial court did not order any psychiatric or psychological evaluation of appellant. Instead, it relied on the declarations and testimony of respondent's expert witness, Dr. Kellerman. Dr. Kellerman had interviews with respondent and Matthew. Based on those interviews, Dr. Kellerman concluded that "there is no father-child attachment," and that appellant was a "psychological stranger" to the child. He also found Matthew to be a "well-developed, bright four year old with good self-esteem."

Based upon respondent's characterization of appellant as an irresponsible person who did not follow through on his promise to visit, Dr. Kellerman warned that if appellant suddenly discontinued the permitted visitation, Matthew could be traumatized. Hence, Dr. Kellerman recommended that any visitation allowed appellant be gradual, monitored (the child should not be forced to separate from his mother), and accompanied by psychological counseling for all three individuals involved.

Dr. Kellerman reiterated his recommendation after appellant met with him voluntarily. The doctor evaluated Matthew but not appellant or respondent.

The trial court adjudged appellant Matthew's natural father. The court conditioned appellant's right of visitation on both his making timely payments of the child support ordered, and undergoing regular counseling from one of the three psychotherapists recommended by Dr. Kellerman.

The court stated that the imposition of those conditions on appellant's right of visitation were required in order:

"(A) To avoid detriment to said minor child, as provided for in Civil Code Section 4601.

"(B) To encourage and promote the best interests and welfare of the said minor child.

"(C) To encourage and promote consistency and continuity in the relationship between Plaintiff and said minor child.

"(D) To encourage and promote responsibility, both emotionally and financially, on the part of Plaintiff with regard to Plaintiff's relationship with said minor child.

"(E) To encourage and promote the stabilization of Plaintiff's relationship with said minor child.

"(F) To encourage and promote a commitment on the part of Plaintiff in connection with and with regard to his relationship with said minor child, consistent with all of the findings and Orders contained herein, so as to have the dual purpose of not only encouraging and promoting the improvement of Plaintiff's character with regard to his said relationship with said minor child, but to also, as aforesaid, encourage and promote the best interests and welfare of said minor child.

"(G) Finally, Plaintiff is admonished to achieve the emotional maturity expected of a father who is sincerely interested in his son."

This appeal followed.

I

Appellant contends that the trial court erred in conditioning his right of visitation upon his making timely support payments.

It having been determined that appellant is Matthew's natural father, his visitation right is statutorily protected. (*Gadbois* v. *Superior Court* (1981) 126 Cal.App.3d 653, 657 [179 Cal.Rptr. 19].)

Civil Code section 4601 provides in pertinent part: "Reasonable visitation rights *shall* be awarded to a parent unless it is shown that such visitation would be detrimental to the best interests of the child. . . ." (Italics added.)

■ The welfare of the child is, of course, the paramount consideration of the court in determining visitation. (*In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 294 [132 Cal.Rptr. 261]; *Griffith* v. *Gibson* (1977) 73 Cal.App.3d 465, 474 [142 Cal.Rptr. 176].) Appellate decisions have repeatedly emphasized that trial courts must bear in mind that "preservation

of parental relationships is in the best interest of the child as well as the parent. [Citations.]" (*In re Marriage of Ciganovich, supra,* 61 Cal.App.3d at p. 294; *In re Brandie W.* (1984) 157 Cal.App.3d 110, 114 [203 Cal.Rptr. 537].) This is in keeping with the avowed intent of the Legislature to insure that minor children have frequent and continuing contact with both parents after the parents have separated or dissolved their marriage. (Civ. Code, § 4600.) Only under extraordinary or exceptional circumstances should a parent's right of visitation be denied. (24 Am.Jur.2d, Divorce and Separation, § 999, pp. 993-994; 32 Cal.Jur.3d, Family Law, § 240, p. 288; *Bogardus* v. *Bogardus* (1929) 102 Cal.App. 503, 506 [283 P. 127].)

■ Respondent concedes that there has been no finding by the trial court that visits by appellant would be detrimental to Matthew. It would be error, under these circumstances, to totally deprive appellant of his visitation right (*Devine* v. *Devine* (1963) 213 Cal.App.2d 549, 555 [29 Cal.Rptr. 132]), and we find error in making this right contingent upon timely payment of child support.[1]

The parties have not referred us to any California case wherein a court has made such a simultaneous order, and our own research has not revealed any.[2]

Both the Legislature and the courts have, in other circumstances, recognized that child support and visitation are two independent rights both accruing to the benefit of the child. (*In re Marriage of Ciganovich, supra,* 61 Cal.App.3d at p. 294.)

Civil Code section 4382 provides: "The existence or enforcement of a duty of support owed by a noncustodial parent for the support of a minor child shall not be affected by a failure or refusal by the custodial parent to implement any rights as to custody or visitation granted by a court to the noncustodial parent."[3] This codifies the holding in cases such as *In re Mar-*

---

[1]Even a requirement that a father may visit his minor children only in the presence of a probation officer was held unwarranted where there was no evidence that he was not a kind and affectionate father. (*Secondo* v. *Secondo* (1933) 218 Cal. 453, 459 [23 P.2d 752].)

[2]In *Devine* v. *Devine, supra,* 213 Cal.App.2d 549, a divorce decree was modified so as to totally deny visitation to a father who had failed to make support payments previously. This was held to be error, since there was no evidence that the visits would be inimical to the welfare of the child.

[3]"[A]n order terminating child support following a contempt adjudication for violation of a visitation order [is] erroneous." (*Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 653 [165 Cal.Rptr. 877, 612 P.2d 967].) See also Code of Civil Procedure section 1694 which provides in pertinent part: ". . . The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court."

*riage of Roesch* (1978) 83 Cal.App.3d 96, 104 [147 Cal.Rptr. 586], and *McDowell* v. *Orsini* (1976) 54 Cal.App.3d 951, 968 [127 Cal.Rptr. 285].

Once it is recognized that visitation by the natural parent is as much a right of the child as it is of the parent, then logically it should be safeguarded as an independent right of the child, and not permitted to be made contingent upon the proper exercise of some other duty or obligation of the parent. This would seem to be the general trend of decided cases in other parts of the country,[4] and in our view, represents the better rule. (51 A.L.R.3d 525; *Kane* v. *Kane* (1964) 154 Colo. 440 [391 P.2d 361, 363]; *Gibford* v. *Gibford* (1960) 55 Wn.2d 760 [350 P.2d 158, 161]; *Commonwealth* v. *Lotz* (1958) 188 Pa.Super. 241 [146 A.2d 362, 363].)

## II

Appellant contends that it was also error for the trial court to condition his right of visitation on his undergoing involuntary therapy.

■ ■■■ The judgment not only mandates that the visits be gradual and monitored (both conditions to which appellant is agreeable),[5] but it also clearly makes appellant's right of visitation contingent upon his undergoing therapy. "Plaintiff if [*sic*] ordered into therapy in accordance with the terms, conditions and provisions hereinbelow ordered, and such therapy is a condition to Plaintiff's visitation with said minor child, . . . ." Appellant is required to undergo such therapy not only for the first six months, as respondent contends, but indefinitely.[6] The portion of the judgment dealing with visitation rights after the first six months reads: "*After May 1, 1984:* (1) If Plaintiff is regularly seeing the therapist, and undergoing such therapy, as such therapy is then prescribed by the treating therapist, . . . then Plaintiff shall be entitled to visitation with said minor child . . . ."

■ Where the mental health of a party is an issue, a court may order *that party to submit to a mental examination under Code of Civil Procedure* section 2032, subdivision (a). Further, the Lanterman-Petris-Short Act

[4]For cases upholding the propriety of the denial of visitation for failure to make support payments, see 51 A.L.R.3d 520, 534-537, and 27B C.J.S., Divorce, section 312, page 481, footnote 5.

[5]In order to protect the best interests of the child, the trial court can consider the party's emotional condition or behavior in relation to visitation. (*Simek* v. *Superior Court* (1981) 117 Cal.App.3d 169, 177 [172 Cal.Rptr. 564].)

[6]The *reporter's transcript indicates that the trial court may have intended to order counseling for appellant for only the first six months. The pertinent portion reads:* "Now, does that mean no more counseling after May 1 in terms of the court's order . . . [¶] THE COURT: That's right." The judgment fails to reflect this limitation.

(Welf. & Inst. Code, § 5150) describes the type of individual who can be ordered by the court to undergo involuntary psychiatric treatment.

■ In the instant case, the trial court expressed no concern regarding appellant's mental health. The court stated that it was ordering appellant to undergo counseling because it did not think that he could be "any kind of a model or father figure" to his son since he was not a "responsible person" either in his personal or professional life.

■ Whatever the court's motivation, absent legislative authorization, the court is not empowered to order an individual to undergo involuntary psychiatric therapy for an indefinite period of time. (*In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 817-818 [161 Cal.Rptr. 879]. See also *Brasher* v. *Brasher* (1967) 253 Cal.App.2d 867, 869 [61 Cal.Rptr. 136].)

■ The psychotherapist, upon whose testimony and declarations the court apparently relied, stated that he had not evaluated appellant. His recommendations regarding visitation were based on his evaluation of Matthew. However, he concluded that nothing said or done by Matthew in his interview indicated that he would suffer psychological stress by coming in contact with his father.

The mother of appellant's five-year-old daughter, Amanda, testified that she had never witnessed appellant being rough or severe with Amanda and that she had no hesitation in entrusting Amanda to appellant. Appellant visits Amanda approximately once a fortnight and often takes her out. Appellant gives Amanda birthday and Christmas gifts, but does not provide any child support.

Where, as here, there is nothing in the record to justify subjection of a party to involuntary psychiatric treatment, an order requiring him to undergo such treatment is a direct violation of his due process rights, as it constitutes a fundamental restriction of his liberty unaccompanied by any procedural safeguards. (*In re Marriage of Matthews, supra,* 101 Cal.App.3d at p. 817.)

Despite the trial court's broad discretion in matters pertaining to visitation, for the reasons stated, the portions of the judgment which condition appellant's right of visitation on his timely payment of child support and

undergoing therapy are reversed. In all other respects, the judgment is affirmed.

Arguelles, J., and Ringer, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.