[No. A063001. First Dist., Div. Two. July 29, 1994.]

In re KATHERINE M. et al., Persons Coming Under the Juvenile Court Law.
SAN FRANCISCO DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
LIANA M., Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication with the exception of part II, section B.

**COUNSEL**

Robert Navarro, under appointment by the Court of Appeal, and Mat Swerling for Defendant and Appellant.

Louise Renne, City Attorney, Ellen Forman and Charlotte Siggins, Deputy City Attorneys, for Plaintiff and Respondent.

**OPINION**

**PHELAN, J.**—This juvenile dependency action commenced in January 1991 with the filing of a petition, under Welfare and Institutions Code

section 300, subdivision (c),[1] by the San Francisco Department of Social Services (the department). At that time appellant, Liana M., and her now-former husband, Edward M., were in the midst of a contentious divorce and custody dispute over their children, Katherine and Patrick. In this, her second appeal from orders of the juvenile court, appellant seeks review of an order of the juvenile court terminating its jurisdiction and dismissing dependency proceedings. Appellant also seeks review of a custody order issued by the juvenile court upon dismissal. (§ 362.4.) In the latter order, the court awarded sole legal custody of the children to their father and ordered the parents to share physical custody, but conditioned appellant's custody rights on her compliance with the court's further order that she remain in individual psychotherapy.

Appellant's primary contention on appeal is that, by ordering her to undergo involuntary psychotherapy for an indefinite period of time as a condition on her custody rights, the juvenile court exceeded its authority and violated her due process rights[2] Appellant also contends that the termination order is not supported by substantial evidence, and that the juvenile court abused its discretion by dismissing dependency proceedings. Although we reject this latter contention, we agree that the open-ended psychotherapy order was improper. Accordingly, we will affirm the dismissal and custody orders as modified to delete the condition that appellant continue indefinitely in psychotherapy.

## I. Factual and Procedural Background

The juvenile court acquired jurisdiction in this case in January 1991, under a petition which alleged that "the parents have emotional problems requiring treatment as evidenced by extreme conflict in their marriage which has placed the minors at risk of severe emotional problems." At the time the petition was filed, Katherine and Patrick were living with appellant. The court ordered the minors into emergency shelter and, later, into foster care. The reunification plan required both appellant and her ex-husband to participate in a program of individual psychotherapy. Psychological services were also provided for Katherine and Patrick.

Following a review hearing in September 1992, the juvenile court ordered Katherine and Patrick returned to the custody of their father under supervision by the department. The court further ordered both parents to continue in individual therapy and to work with the therapists for their children. At that

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]Appellant does not challenge the custody determination itself.

time, the court stated that its goals were to increase unsupervised visitation for appellant, to modify the custody order to establish some type of joint custody, and to remand the case back to family court within six months. Appellant sought review of the September 1992 order, which we affirmed in *In re Katherine M.*, A059395, by a nonpublished opinion filed September 29, 1993.

On April 20, 1993, the social worker assigned to this case, Lynn Jones, reported that there had been two significant changes in the family since the juvenile court assumed jurisdiction: The children's father had developed the ability to safely care for and nurture the children, and the conflict between appellant and her ex-husband had subsided. Thus, Ms. Jones recommended termination of dependency proceedings, saying that "with the parent's current level of functioning, visitation in place, and monitoring by therapists, [] there is no longer a need for [the department's] supervision." Shortly after Ms. Jones's report was prepared and served on the parties, both appellant and her ex-husband filed motions regarding custody of the children. Appellant sought evenly-shared physical custody of the children under the department's supervision. Her ex-husband sought sole legal and physical custody of the children.

A combined hearing on the department's dismissal recommendation and the parents' cross-motions regarding custody was held on July 19, 1993. The department called Ms. Jones, who testified to two recent incidents in which appellant's ex-husband slapped Patrick. Ms. Jones explained that those two incidents did not affect her recommendation of dismissal because Edward had reported his own misconduct to his and the children's therapists. The court admitted Ms. Jones's report into evidence.

On cross-examination, Ms. Jones testified that she had recently learned that the parents had arranged for increased visitation between appellant and the children. She also said that the department did not need to monitor the effect of the new custody arrangement because the children would continue to see their therapists. In addition, Ms. Jones suggested that the parties could petition the family court if problems should arise. Ms. Jones was also cross-examined about appellant's allegations that her ex-husband had physically and sexually abused the children. She testified that she had never seen any indication of abuse and that neither of the children's therapists had reported any abuse.

Edward's therapist, Larry Jacobs, testified that his client did not need the supervision of the court to safely and adequately care for the children. Jacobs acknowledged, however, that Edward had a history of being physically violent with appellant during their marriage, and that he was still working on controlling his anger in his interactions with the children.

Edward testified on his own behalf about the care he gives Katherine and Patrick. He stated that he did not abuse the children, that he planned to continue their therapy, that he would agree to the appointment of a special master to resolve any conflict arising after dismissal of the dependency proceedings,[3] and that he did not believe continued court supervision was necessary. On cross-examination, Edward testified that he and appellant were able to negotiate changes in the visitation schedule without consulting Ms. Jones. He also said he did not consult Jones about an incident in which appellant refused to return the children and he had to call the police.

Appellant's witnesses included: her own therapist, Rita Chacon; Katherine's therapist, Pamela Hawkins; and Patrick's therapist, Margaret Wilson. Hawkins testified that continued supervision was necessary because "things could escalate" between appellant and her ex-husband, but that a special master appointed by the family court could handle the supervision. Chacon testified that appellant would require continued therapy, and that continued court supervision was necessary because of the history of conflict in the family. Wilson testified that the family was "still in the early stages of healing" and, therefore, needed someone to monitor and mediate any conflicts. Wilson acknowledged, however, that a special master could perform that function.

Appellant testified about her increasing involvement with the children and her progress in therapy. She said that communication between her and her ex-husband was not good, but had improved to the point where they were openly communicating. She further stated that she would be willing to cooperate if the family court appointed a special master. Appellant conceded that, even during times of conflict, she and her ex-husband were able to make decisions about the children without the aid of Ms. Jones or the court. For example, she admitted that she did not contact Ms. Jones when she found out about one of the incidents in which her ex-husband slapped Patrick but, rather, discussed the matter with Edward directly.

At the conclusion of the July 1993 hearing, the court terminated its jurisdiction and dismissed the dependency proceedings. Citing Family Code section 3006, the court also entered a custody order under which Edward was awarded sole legal custody with the understanding that the legal custody issue would be reevaluated in one year, with the goal being to establish joint legal custody. Citing Family Code section 3004, the court ordered the parents to share physical custody of the children, with the condition that

---

[3]The department introduced a stipulation under which the parties agreed that "the San Francisco Family Law Court has appointed special masters in cases in which all parties agree, and that the parties themselves must pay for the special master."

appellant's custody rights were dependent upon her remaining in individual psychotherapy.[4] In its dismissal order, the court made the following observation: "While presenting evidence on the commendable job done by the parents in improving their communication and working together for the benefit of the children, counsel appear to be taking the position that it would be economically and logistically beneficial to the family for the Court to continue its jurisdiction. There are literally thousands of families in the City and County of San Francisco who could benefit from financial assistance and the availability of a social worker. That is not, however, the purpose of the Juvenile Court or [the department]."

Upon relinquishing jurisdiction, the juvenile court ordered the case transferred back to the domestic relations department of the superior court where there was an existing file, No. 926-378, on the parties' dissolution action. This timely appeal followed.

## II. Discussion

### A. Imposing an Open-ended Psychotherapy Requirement Violated Appellant's Due Process Rights.

This appeal presents a novel issue of the juvenile court's authority to make "exit" orders upon termination of dependency jurisdiction, and constitutional limits on that authority. ■ Specifically, appellant contends that the juvenile court violated her due process rights by conditioning her custody rights on compliance with a court order that she continue indefinitely in individual psychotherapy, and by failing to consider the impact of its counseling order on her existing financial obligations. We agree with appellant and, accordingly, will reverse the juvenile court's counseling order.

We begin our analysis of this issue by noting that the juvenile court has *exclusive* jurisdiction to issue orders regarding the custody of a dependent child during the pendency of juvenile court proceedings. (§§ 302, subd. (c), 304, 362.) When it terminates its dependency jurisdiction, the juvenile court is further authorized to enter "an order determining the custody" of a minor whose parents are parties to a pending dissolution action, or as to whom a previous custody order has been issued by a superior court. (§ 362.4.) Upon termination of its jurisdiction over such a minor, the juvenile court's custody order must be filed in the existing family court proceeding, where it remains

---

[4]In point of fact, the cited sections of the Family Code were not operative until January 1, 1994. (See Stats. 1992, ch. 162, § 13.) At the time the court entered its custody order, former Civil Code section 4600.5 contained the relevant custody law provisions.

in effect until modified or terminated by a subsequent order of the superior court. (*Ibid.*; see also *In re Roger S.* (1992) 4 Cal.App.4th 25, 30 [5 Cal.Rptr.2d 208].) Any action to enforce, modify, or terminate the juvenile court's "exit" orders regarding custody must be brought in the related family court proceeding after the dismissal order becomes final (see §§ 304, 362.4), and will be decided based on "the best interest of the child" (Fam. Code, §§ 3011, 3020 et seq., Civ. Code, former §§ 4600, 4608; *In re Michael B.* (1992) 8 Cal.App.4th 1698, 1705 [11 Cal.Rptr.2d 29]).

With respect to a "minor who is the subject of [dependency] proceedings," the juvenile court is further authorized to enter reasonable orders requiring the child's parents to participate in a counseling program. (§ 362, subd. (c).) "The program in which a parent . . . is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300." (§ 362, subd. (c).) Similarly, in dissolution actions and other proceedings under The Family Law Act, Civil Code former section 4000 et seq., the court was authorized to order parents involved in a custody dispute to participate in "outpatient counseling with a licensed mental health professional," for a period not to exceed six months, based on express findings that: (1) The dispute between the parents posed a substantial danger to the best interests of the child; and (2) The counseling would be in the best interests of the child. (Civ. Code, § 4608.1, repealed by Stats. 1992, ch. 162, § 3, eff. Jan. 1, 1994 (hereafter Civ. Code, former § 4608.1).) Sections 3190 through 3192 of the new Family Code incorporate the provisions of Civil Code former section 4608.1 without substantive change except that, effective January 1, 1994, counseling may be ordered for a period of not more than one year. (Fam. Code, § 3190, subd. (a).)

The problem presented in this case is that there is no clear statutory authority for a juvenile court "exit" order requiring a parent to submit to counseling when his or her child is no longer to be the subject of dependency proceedings and, presumably, the conditions that brought the child within the juvenile court's jurisdiction have been eliminated. (Cf. § 362, subd. (c).) This problem persists even when the court purports to require the counseling in connection with, or as a subsidiary term of, an "order determining custody" of the child. (See § 362.4; *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1503 [285 Cal.Rptr. 374] [section 362.4 does not authorize orders "relating to" visitation or custody].)

Likewise, neither Civil Code former section 4608.1 nor the new Family Code sections 3190 through 3192 expressly apply to a custody dispute adjudicated in juvenile court. (Civ. Code, former § 4608.1, subd. (a); Fam. Code, § 3021.) By its own terms, Civil Code former section 4608.1 applied

only to proceedings under the Family Law Act. (Civ. Code, former § 4608.1, subd. (a).) Upon enactment of the new Family Code, many of the custody provisions contained in the former Civil Code—including former section 4608.1—were extended to apply to proceedings under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.), and the Uniform Parentage Act (Fam. Code, § 7600 et seq.). (See Cal. Law Revision Com. com., Deering's Ann. Fam. Code (1994 ed.) § 3021, p. 226.) This expansion has been described as providing "a complete set of rules where custody or visitation is determined in proceedings pursuant to these acts, as well as providing for related matters such as investigations, appointment of counsel to represent the child, mediation, and counseling." (*Ibid.*) However, this "complete set of rules" has not been extended to custody determinations made by the juvenile court in proceedings under the Welfare and Institutions Code. (See *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711-713 [17 Cal.Rptr.2d 759] [custody rules contained in Civ. Code, former § 4600 et seq. do not apply to dependency proceedings generally or to juvenile court exit order determining custody]; *In re Roger S., supra,* 4 Cal.App.4th at pp. 30-31.)

Of course, after terminating its dependency jurisdiction and determining the custody of the formerly dependent children, a superior court, which is to that point in session as a juvenile court, arguably can "switch hats" and enter a counseling order while acting "in its additional capacity as a family law court." (*In re Sarah M., supra,* 233 Cal.App.3d at p. 1504) If so, Civil Code former section 4608.1 and the new Family Code sections 3190-3192 provide the necessary statutory authority for the court's order. Furthermore, although it would have been highly inefficient to do so in this case, the juvenile court can simply refer the counseling issue to the relevant family court, which is unquestionably vested with authority to require the parties to a custody dispute to submit to counseling. (See *In re Sarah M., supra,* 233 Cal.App.3d at pp. 1503-1504, citing Code Civ. Proc., § 128, subd. (a)(3).) At a minimum, then, it is difficult to see how a party could be ever be prejudiced by a counseling order entered by the juvenile court without specific statutory authority but in conformity with Civil Code former section 4608.1 or Family Code sections 3190-3192.

Unfortunately, that is not what happened in this case. The juvenile court's counseling order conformed to some, but not all, of the requirements of Civil Code former section 4608.1. There was, for example, sufficient evidence to support implied findings that the parents' ongoing custody dispute posed a substantial danger to the best interest of Katherine and Patrick, and that ordering appellant to continue in individual psychotherapy would be in the

best interest of the children.[5] The juvenile court's order was also undoubtedly designed to promote communication and reduce conflict between appellant and her ex-husband. However, the court did not establish any time limit on the court-ordered psychotherapy, refused to evaluate the financial impact of its order and, in effect, required appellant to return to court in order to terminate or obtain relief from the financial burden of the order. In these latter respects, the court's order was similar to those invalidated in *Camacho* v. *Camacho* (1985) 173 Cal.App.3d 214, 221 [218 Cal.Rptr. 810], and *In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 817-818 [161 Cal.Rptr. 879].

*In re Marriage of Matthews, supra,* was a custody dispute arising in a dissolution action in which the mother challenged an order requiring her to undergo therapy for as long as a court-appointed psychiatrist deemed necessary. (101 Cal.App.3d at pp. 817-818.) The apparent purpose of the order was to help decrease the animosity between the parents and to enable the mother to deal in a more mature manner with the exercise of the father's visitation rights. (*Ibid.*) Despite the trial court's "praiseworthy motives," the court of appeal reversed the open-ended counseling order, holding that it was beyond the authority of the trial court, and constituted an unlawful delegation of judicial power to the psychiatrist. (*Ibid.*) In dicta, the court suggested that the counseling order violated the mother's due process rights. (*Ibid.*)

More recently, in *Camacho* v. *Camacho, supra,* the court applied *In re Marriage of Matthews* to hold that a family court order requiring a father to submit to involuntary psychotherapy as a condition on his custody rights was a direct violation of due process, "as it constitutes a fundamental restriction of his liberty unaccompanied by any procedural safeguards." (173 Cal.App.3d at pp. 221-222.) In its due process analysis, the court was obviously troubled by the absence of any standards and findings, such as those required by the Lanterman-Petris-Short Act (§ 5150 et seq. [civil commitment statute]), on which to base a determination that the parent could be subjected to involuntary psychiatric treatment. The court was also concerned that there was no time limit on the court's order. (173 Cal.App.3d at p. 221.)

In 1989, in response to the foregoing Court of Appeal decisions, the Legislature enacted Civil Code former section 4608.1. (Stats. 1989, ch. 636, § 2, p. 2137; and see Assem. Com. on Judiciary, 3d reading analysis of Assem. Bill No. 1906 (1989 Reg. Sess.) as amended May 8, 1989, p. 3; Sen.

---

[5]Appellant does not challenge the court's order insofar as it required her, but not her ex-husband, to participate in counseling.

Com. on Judiciary, 3d reading analysis of Sen. Bill No. 884 (1989 Reg. Sess.) as amended Aug. 29, 1989, p. 2 [incorporating counseling provisions of Assem. Bill No. 1906].) That section specifically authorized the family court to order involuntary psychotherapy and established standards for invoking that authority. It also contained a requirement that the court make express findings about the circumstances warranting the counseling order, a statement of specific goals and objectives for the court-ordered counseling, and limits on the type (outpatient only) and duration (a six-month period which automatically expires and is renewable only by further court order entered upon the motion of a party) of court-orderd counseling. (Civ. Code, former § 4608.1.) In addition, the Legislature addressed concerns about conditioning a parent's custody or visitation rights on his or her ability to pay for court-ordered therapy by requiring the court to fix the cost of such therapy and to reasonably apportion it between the parties so as not to jeopardize the parties' other financial obligations. (*Ibid.*) We have no doubt that the procedural safeguards contained in Civil Code former section 4608.1—and reenacted in Family Code sections 3190-3192—are sufficient to overcome the due process objections raised in *Camacho* v. *Camacho*, and *In re Marriage of Matthews, supra.*

We also have no doubt that a juvenile court counseling order could be sustained in the face of a due process challenge if it incorporated the procedural safeguards contained in Civil Code former section 4608.1 or Family Code sections 3190-3192. Because the order requiring appellant to continue indefinitely in (and bear the cost of) psychotherapy without adopting those safeguards, it cannot stand. Of course, even if the juvenile court had crafted an order in conformity with those provisions, it would have expired by now. (Fam. Code, § 3190, subd. (a) [one-year time limit]; Civ. Code, former § 4608.1, subd. (a) [six-month time limit].) Accordingly, we will vacate that portion of the August 5, 1993, order which conditioned appellant's custody rights on her compliance with the psychotherapy requirement.

B. *The Juvenile Court Did Not Abuse Its Discretion by Dismissing the Dependency Proceedings.\**

. . . . . . . . . . . . . . . . . . . . . . . . .

III. CONCLUSION

For all the foregoing reasons, we vacate the portion of the juvenile court's August 5, 1993, order which conditions appellant's custody rights on her

---

*See footnote, *ante,* page 91.

remaining indefinitely in psychotherapy. In all other respects, the order is affirmed. Our decision is without prejudice to further proceedings in the domestic relations division of the superior court for an order regarding counseling, if such an order is warranted in the present circumstances of the parties and authorized by Family Code sections 3190-3192. (See § 304.)

Kline, P. J., and Smith, J., concurred.