Filed 9/13/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BOBBY FEEHAN,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Respondent;<br><br>LAUREN SETO et al.,<br><br>        Real Parties in Interest. | A170984<br><br>(Alameda County Super. Ct. No. 23-FL-05671) |

Bobby Feehan seeks extraordinary writ relief from the trial court's order denying them temporary visitation during the pendency of their petition to establish a parental relationship with minor L.S. under Family Code[1] section 7611, subdivision (d).[2] We previously issued an order to show cause and now grant the writ petition.

**BACKGROUND**

Feehan and real party in interest Lauren Seto entered into a romantic relationship while Seto was pregnant with L.S. At that time, Seto was in a relationship and registered domestic partnership with Jude Guide. Guide

---

[1] All further undesignated statutory references are to the Family Code.

[2] Petitioner Feehan and real party in interest Jude Guide use they/them pronouns.

1

adopted L.S. after his birth, and Seto and Guide are L.S.'s legal parents. Guide and Seto also share parenting of L.S.'s older brother.

Feehan asserts the following. They acted as a parent to L.S. from his birth. Feehan and Seto spent all their time together by the time L.S. was one year old. Feehan, Seto, and L.S. lived in a single household from the time L.S. was two years old until he was over five. During that time, Feehan was involved in daily childcare, such as bathing, dressing, sleep training, and potty training, participated in L.S.'s education, traveled with L.S. and Seto as a family, and attended special events, such as preschool graduation, birthdays, and holidays. L.S. refers to Feehan as one of his parents when talking to third parties. When Feehan and Seto ended their relationship in November 2023, Seto unilaterally cut off almost all contact between Feehan and L.S.

Feehan filed a petition to determine their parental relationship with L.S. Feehan also filed a request for a temporary order for visitation with L.S. pending resolution of the issue of parentage.[3]

Guide and Seto both opposed the motion. Guide and Seto explained they were each awarded 50 percent custody of L.S. as part of their divorce, and they requested the court maintain that arrangement. They asserted Feehan was not viewed as a parental figure, but rather as a romantic partner of Seto who assisted with childcare when L.S. was in Seto's home.

The court denied Feehan's request for temporary visitation with L.S. because, pursuant to Family Code sections 7604 and 6436, it did "not find[ ] authority, under the circumstances of this case to order pendente lite custody

---

[3] Feehan initially sought temporary visitation on an ex parte basis. The court denied the ex parte relief and that ruling is not at issue in this appeal.

and visitation . . . ." The court rejected Feehan's argument that courts have equitable authority to issue pendente lite visitation when the petitioner makes a prima facie case for parentage. An order after hearing was entered on June 14, 2024.

Feehan subsequently filed the pending petition for writ of mandate. This court issued an order to show cause and requested the parties address the following questions, in addition to any other issues: (1) "Whether former Civil Code sections 4600, subdivision (a) and 4601 (now repealed), have modern equivalents in Family Code sections 3022 and 3100, subdivision (a), respectively, and, if so, does *Gadbois v. Superior Court* (1981) 126 Cal.App.3d 653 (*Gadbois*), which construed the now-repealed Civil Code sections noted above, thereby establish that the trial court had authority in this case to enter a pendente lite visitation order pursuant to Family Code sections 3022 and 3100, subdivision (a)[;]" and (2) "Is there any legislative history or other indicia of legislative intent as to whether the Legislature intended to confine Family Code section 6346 to Domestic Violence Prevention Act [(§ 6200 et seq.; DVPA)] cases or, conversely, intended section 6346 to apply more broadly."

## DISCUSSION

Feehan contends the superior court has broad equitable authority to grant pendent lite visitation in parentage cases. In response, Seto and Guide assert the Uniform Parentage Act (§ 7600 et seq.; UPA) has established specific requirements for authorizing pendente lite visitation—i.e., the existence of a "parent and child relationship . . . pursuant to Section 7540 or 7541"—which does not apply to Feehan.

3

## I.  General Authority to Award Visitation Under the Family Code

Freehan relies on sections 3022 and 3100, subdivision (a) and *Gadbois*, *supra*, 126 Cal.App.3d 653 to assert the court has broad equitable discretion to award pendente lite visitation.  Seto and Guide contend subsequent statutory amendments to the UPA negate *Gadbois*'s analysis and limit the court's discretion to award temporary visitation.

### A.  Relevant Statutory Provisions

"Division 8, part 2 of the Family Code governs the right to custody of a minor child.  Part 2 applies not only to dissolution, nullity and legal separation proceedings and actions for exclusive custody, but also to proceedings to determine custody or visitation."  (*W.S. v. S.T.* (2018) 20 Cal.App.5th 132, 150.)  This part specifically encompasses "proceeding[s] to determine physical or legal custody or visitation . . . pursuant to the Uniform Parentage Act."  (§ 3021, subd. (f).)

"Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child."  (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.)  Section 3020 provides, "The Legislature finds and declares that it is the public policy of this state to ensure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children. . . . [¶] . . . The Legislature finds and declares that it is the public policy of this state to ensure that children have frequent and continuing contact with both parents after the parents have . . . ended their relationship, and to encourage parents to share the rights and responsibilities of child rearing . . . except when the contact would not be in the best interests of the child."  (§ 3020, subds. (a), (b).)

4

Section 3022 provides broad authority to the courts to enter any custody or visitation order necessary to achieve these aims, including during the pendency of an action: "The court may, during the pendency of a proceeding or at any time thereafter, make an order for the custody of a child during minority that seems necessary or proper."  Section 3060 in Chapter 3, entitled "Temporary Custody Order During Pendency of Proceeding," likewise authorizes parties to file "[a] petition for a temporary custody order" either "with the initial filing of the petition or . . . at any time after the initial filing."  (§ 3060.)

In assessing such requests, the California Supreme Court has emphasized that courts have " 'the widest discretion to choose a parenting plan that is in the best interest of the child.' " (*Montenegro v. Diaz*, *supra*, 26 Cal.4th at p. 255.)  Section 3100 provides "the court shall grant reasonable visitation rights to a parent when it is shown that the visitation would be in the best interest of the child . . . .  In the discretion of the court, reasonable visitation rights may be granted to any other person having an interest in the welfare of the child."  (§ 3100, subd. (a).)  "Appellate decisions have repeatedly emphasized that trial courts must bear in mind that 'preservation of parental relationships is in the best interest of the child as well as the parent. [Citations.]'  [Citations.]  This is in keeping with the avowed intent of the Legislature to [e]nsure that minor children have frequent and continuing contact with both parents after the parents have separated or dissolved their marriage.  [Citation.]  Only under extraordinary or exceptional circumstances should a parent's right of visitation be denied."  (*Camacho v. Camacho* (1985) 173 Cal.App.3d 214, 218–219; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2024) ¶ 5:101 ["Visitation requests are decided under uniform standards (applicable in any proceeding where child

custody/visitation is in issue) based on the child's *best interests* ([ ]§ 3100 et seq.). The court's primary concern is to ensure the child's health, safety and welfare; and so long as consistent with the safety of the child and family, to ensure the child frequent and continuing contact with both parents"].)

The statutory scheme thus repeatedly and clearly emphasizes the broad authority of courts to enter custody and visitation orders during the pendency of a proceeding based on the best interest of the child, with an aim toward preserving the child-parent relationship.

## B. *Gadbois v. Superior Court* (1981) 126 Cal.App.3d 653

In evaluating the application of these provisions to the current dispute, we find *Gadbois*, *supra*, 126 Cal.App.3d 653 instructive. *Gadbois* addressed whether former Civil Code sections 4600 and 4601 authorized temporary visitation for a petitioner attempting to establish paternity. We note former Civil Code sections 4600 and 4601 were replaced in relevant part by sections 3020, 3022, and 3100, subdivision (a) and are substantively identical. (Compare former Civ. Code, § 4600, amended by Stats. 1979, ch. 915, § 3, with §§ 3020 [Law Revision Commission comment noting "Section 3020 continues the first paragraph of former Civil Code Section 4600(a) without substantive change"]; 3022 [Law Revision Commission comment noting "Section 3022 continues without substantive change the first sentence of the second paragraph of former Civil Code Section 4600(a)"]; compare former Civ. Code §§ 4601, amended by Stats. 1969, ch. 1608, § 8, with 3100, subd. (a) [Law Revision Commission comment noting "Subdivision (a) of Section 3100 continues former Civil Code Section 4601 without substantive change"].)

In *Gadbois*, the plaintiff filed a petition to establish paternity. (*Gadbois*, *supra*, 126 Cal.App.3d at p. 655.) In connection with his petition, he sought pendente lite visitation rights and offered declarations and a blood

6

test as evidence of paternity. (*Ibid.*) The trial court denied his request. In doing so, the court did not evaluate the evidence of paternity or consider detriment to the child, but "declined to make a preliminary determination of paternity and opined that no harm, irreparable or otherwise, would be done if visitation were postponed until parentage was established." (*Ibid.*)

The court of appeal disagreed, noting "[a]lthough we can find no specific authorization for a pendente lite visitation order in the Uniform Parentage Act . . . , we also find no bar to pendente lite visitation." (*Gadbois, supra*, 126 Cal.App.3d at p. 656.) The court identified two then-existing Civil Code provisions which granted broad authority to courts to enter orders impacting custody and visitation. (*Id.* at pp. 655–656.) Former Civil Code section 4601 provided, " 'Reasonable visitation rights shall be awarded to a parent unless it is shown that such visitation would be detrimental to the best interests of the child. In the discretion of the court, reasonable visitation rights may be granted to any other person having an interest in the welfare of the child.' " (*Gadbois*, at p. 655.) Similarly, former Civil Code sections 4600, subdivision (a) "authorize[d] the trial court to, 'during the pendency of the proceeding or at any time thereafter, make such order for the custody of the child during minority as may seem necessary or proper.' In this context, 'order for the custody of the child' include[d] order for visitation." (*Gadbois*, at p. 656.) The court explained these two provisions "apply to any proceeding where there is at issue the custody of a minor child." (*Ibid.*)

Having concluded the trial court had authority to award pendente lite visitation in a Uniform Parentage Act proceeding pursuant to these provisions, the court then addressed "when to grant pendente lite visitation rights." (*Gadbois, supra*, 126 Cal.App.3d at p. 656.) The court explained trial courts must make "[a] preliminary determination of paternity," which

7

"requires a showing by a preponderance of the evidence that the plaintiff is the child's father." (*Id.* at p. 657.) Such a finding "is not res judicata, and the evidence need not be so extensive as at the trial of the action." (*Ibid.*) The court thus vacated the trial court's order denying pendente lite visitation and ordered the court to reconsider the matter. (*Id.* at pp. 657–658.)

The reasoning in *Gadbois* is equally applicable to sections 3020, 3022, and 3100, subdivision (a).[4] These provisions grant courts broad authority to enter visitation orders "during the pendency of a proceeding" based on the child's best interests. (See §§ 3020, 3022, 3100, subd. (a).) And section 3021, which was enacted after *Gadbois*, codifies its premise—i.e., that sections 3022 and 3100, subdivision (a) apply "in *any*" "proceeding to determine physical or legal custody or visitation in an action pursuant to the [UPA]." (See § 3021, subd. (f), italics added; *Gadbois, supra*, 126 Cal.App.3d at pp. 655–656 [former Civil Code sections 4600 and 4601 "apply to any proceeding where there is at issue the custody of a minor child."].) The Law Revision Commission comments to section 3021 note that it "expands the application of this part to proceedings in which custody or visitation is determined in an action pursuant to the [DVPA] or the [UPA]. *Application of this part to these acts provides a complete set of rules where custody or*

---

[4] Seto and Guide initially argued *Gadbois* was distinguishable because it involved evidence that the petitioner was the minor's biological father, thus falling within section 7604. However, the trial court's "denial of pendente lite visitation was not based upon evaluation of the paternity evidence or upon evidence concerning detriment to the child from visitation," and it "declined to make a preliminary determination of paternity." (*Gadbois, supra*, 126 Cal.App.3d at p. 655.) Rather, the court evaluated a purely legal issue: whether the provisions of the Family Law Act and Uniform Parentage Act authorized the trial court to issue temporary visitation before parentage is established. We face the same question here.

*visitation is determined in proceedings pursuant to these acts.*"  (Italics added.)

## II.  Authority to Award Visitation Under Family Code Section 7604

While Division 8, Part 2 of the Family Code provides courts with broad authority to issue visitation orders, Seto and Guide contend section 7604, which was enacted after *Gadbois*, restricts the court's authority in connection with UPA proceedings.  They argue section 7604 limits a court's authority to enter temporary visitation orders by requiring courts to first find that a "parent and child relationship exists pursuant to Section 7540 or 7541."  Because Feehan is seeking to establish a parental relationship under section 7611, subdivision (d) rather than sections 7540 or 7541, they assert Feehan is precluded from seeking pendente lite visitation.

We disagree, and find section 7604 does not preclude courts from awarding temporary visitation in UPA actions under other circumstances.  " 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.'  [Citation.]  'We first examine the statutory language, giving it a plain and commonsense meaning.'  [Citation.]  'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' "  (*California Advocs. for Nursing Home Reform v. Aragon* (2021) 60 Cal.App.5th 500, 507.)

Moreover, "[a]s our Supreme Court has explained, ' "every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' "  (*In re Donovan L.*

(2016) 244 Cal.App.4th 1075, 1091 [harmonizing "interpretation of what constitutes 'an appropriate action' under section 7612, subdivision (c)" with "the broader statutory framework under the Uniform Parentage Act"].)

## A. The Statute Does Not Expressly Preclude Visitation

Section 7604 of the UPA states, "A court may order pendente lite relief consisting of a custody or visitation order pursuant to Part 2 (commencing with Section 3020) of Division 8, if the court finds both of the following: [¶] (a) A parent and child relationship exists pursuant to Section 7540 or 7541. [¶] (b) The custody or visitation order would be in the best interest of the child."[5]

Here, section 7604 states a court "may order pendente lite relief" if it makes certain findings. The statute does not require such relief. Nor does it prohibit the court from ordering such relief in other situations. Seto and Guide's interpretation would require us to add the word "only" between "may" and "order" but we are " 'loathe to construe a statute which has the effect of "adding" or "subtracting" language.' " (*General Development Co., L.P. v. City of Santa Maria* (2012) 202 Cal.App.4th 1391, 1395 (*General Development*).)

Moreover, " '[i]t is a well-settled maxim of statutory construction that "a statute is to be construed in such a way as to render it 'reasonable, fair and harmonious with [its] manifest [legislative] purposes . . . .' [citations], and the literal meaning of its words must give way to avoid harsh results and mischievous or absurd consequences." ' " (*General Development, supra*, 202 Cal.App.4th at p. 1395.) Former Civil Code section 7004.5—the predecessor to section 7604—first added the language authorizing pendente relief in

_____

[5] Sections 7540 and 7541 address parentage presumptions for individuals "who cohabited at the time of conception and birth." (§§ 7540, subds. (a), (b), 7541, subd. (a).) The parties agree neither section 7540 nor section 7541 applies to Feehan.

10

1990. (Stats. 1990, ch. 543, § 1.) At that time, only a husband was allowed to file a motion seeking blood tests to challenge the biological tie between himself and a child from the marriage. (Legis. Counsel's Dig., Sen. Bill No. 2015 (1989–1990 Reg. Sess.) amended by Stats. 1990, ch. 543, § 1.) Senate Bill No. 2015 expanded this provision to allow a presumed father or the child to also seek blood tests to establish biological paternity and, in connection with this amendment, clarify that they could also seek pendente lite visitation. (Legis. Counsel's Dig., Sen. Bill No. 2015 (1989–1990 Reg. Sess.) amended by Stats. 1990, ch. 543, § 1.) The Legislative history thus indicates this provision—which subsequently was rescinded and reenacted as section 7604—was designed to clarify that courts could consider ordering more expansive pendente lite visitation in such situations. Nothing in the legislative history suggests the statue was designed to eliminate or otherwise reduce any other visitation rights.

## B. The UPA Framework

The framework of the UPA also does not suggest section 7604 was intended to be the exclusive authority for allowing courts to issue temporary visitation orders. "The UPA was passed in 1975 to extend the parent and child relationship equally to every child and to every parent, regardless of the marital status of the parents. The UPA defines 'parent and child relationship' as 'the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations.' . . . Legal parenthood can be established in a number of different ways. Under the Family Code, a person is conclusively presumed to be the parent of a child if he or she was married to and cohabitating with the child's mother, except as specified. A person who receives a child into his or her home and holds the child out as his or her

11

own is also presumed a parent of the child." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2684 (2017–2018 Reg. Sess.) as amended April 11, 2018.)

In 2014, the Legislature amended the UPA to expand its recognition of parents. (See, e.g., Assem. Bill No. 1403 (2013–2014 Reg. Sess.) as amended by Stats. 2013, ch. 510, § 1.) For example, it amended the definition of "natural parent" to mean "nonadoptive parent . . . whether biologically related to the child or not." (§ 7601, subd. (a).) It also specified that courts are not precluded from "finding that a child has a parent and child relationship with more than two parents." (§ 7601, subd. (c).) The UPA also "was updated in 2014 to be gender neutral." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2684 (2017–2018 Reg. Sess.) as amended April 11, 2018.)

Seto's and Guide's interpretation of section 7604 runs counter to the Legislature's repeated efforts to recognize and expand rights for different family structures and parent-child relationships. Under their interpretation, only spouses who cohabited at the time of conception and birth or biologically related individuals—i.e., those demonstrating a parent-child relationship under sections 7540 or 7541—would qualify for temporary visitation. But the UPA "provides that the 'parent and child relationship may be established . . . (a) Between a child and the *natural* parent . . . by proof of having given birth to the child, or under this part.' [Citation.] This 'part' includes section 7611." (*W.S. v. S.T.*, *supra*, 20 Cal.App.5th 132, 150, quoting § 7610, subd. (a).) Allowing temporary visitation for only one subset of natural parents creates a hierarchy in which the relationships between children and certain "natural parents" are given greater protections—e.g., visitation to support those

12

relationship—than others. We cannot conclude the statutory framework or Legislative history supports such an interpretation.

Seto and Guide further assert the Legislature was presumably aware of *Gadbois* when it enacted section 7604 and declined to provide for broader pendente lite visitation. We agree it is reasonable to assume the Legislature was aware of *Gadbois*, but reach a different conclusion. If the Legislature's intent "was truly to abrogate" a court's equitable authority to issue temporary visitation, "it is reasonable to assume that it would have done so explicitly." (See *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 88; see also *Estate of Housley* (1997) 56 Cal.App.4th 342, 354 [noting " 'the well-settled principle that courts should not presume the Legislature intended "to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." [Citations.] The Legislature could have easily stated it intended to abrogate long-established equitable principles. It did not do so.' "].) As explained above, when section 7604 was enacted, the Family Code contained more limited definitions of parentage, and its purpose was "to specify that the court may order pendente lite relief" for an expanded group of individuals who could seek blood tests. (See Legis. Counsel's Dig., Sen. Bill No. 2015 (1989–1990 Reg. Sess.) Stats. 1990, ch. 543, § 1.) Specifying the right to visitation in a specific situation—as the Legislature also did in the DVPA—does not indicate the Legislature intended to abrogate a court's longstanding and broad authority to issue any orders necessary for the best interest of the child, including visitation. (See also § 3021, subd. (f) [applying Div. 8, Pt. 2—including §§ 3022 and 3011, subd. (a)—to UPA proceedings].)

In sum, we conclude trial courts have discretion under sections 3022 and 3100, subdivision (a) to enter temporary visitation orders if the

13

requesting party has made a preliminary showing that they are a presumed parent and the order is found to be in the best interests of the child.[6] Because the trial court concluded it lacked authority to grant Feehan's request for pendente lite custody and visitation under the Family Code, we remand for the trial court to consider those issues in the first instance, namely, to determine whether Feehan has made a preliminary showing that they are a presumed parent and, if so, whether visitation is in the best interests of the child. (See *E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1084 [" '[A] discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order.' "].)

## DISPOSITION

Let a peremptory writ of mandate issue commanding respondent court to vacate its order denying Feehan's request for pendente lite visitation and to hold a new hearing to reconsider Feehan's request for pendente lite visitation in accordance with this opinion. This opinion shall be final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).) Feehan shall recover costs. (Cal. Rules of Court, rule 8.493(a).)

---

[6] Because we reach this conclusion, we need not address Feehan's argument that section 6346 provides alternative authority for temporary visitation outside of a domestic violence situation. However, we note section 6346 provides another example of the Legislature seeking to clarify the opportunity for visitation in certain circumstances, e.g., in cases involving domestic violence and restraining orders, when a "party who has requested custody or visitation has not established a parent and child relationship under subparagraph (B) of paragraph (2) of subdivision (a) of Section 6323, but has taken steps to establish that relationship by filing an action under the [UPA]."

14

                                        PETROU, J.


WE CONCUR:


TUCHER, P. J.


FUJISAKI, J.


(*A170984; Feehan v. Superior Court*)

*Feehan v. Superior Court* **(A170984)**

Trial Court:      Alameda County Superior Court

Trial Judge:      Hon. Maria Morga

Attorneys:

The Wald Law Group, Deborah Wald; Law Office of Anne Mania and Anne Mania for Petitioner.

No appearance for Respondent.

Hart Ginney and Robyn S. Ginney for Real Party in Interest Lauren Seto.

Sound Law Group and Staci Lambright for Real Party in Interest Jude Guide.